356 So.2d 873 (1978)
Frederick DUKES, Appellant,
v.
STATE of Florida, Appellee.
Nos. 77-541, 77-854.
District Court of Appeal of Florida, Fourth District.
March 21, 1978.
Rehearing Denied April 18, 1978.
*874 Richard L. Jorandby, Public Defender, and Frank B. Kessler and Joseph Stuart Karp, Asst. Public Defenders, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Glenn H. Mitchell, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
Appellant was convicted of delivery of heroin, adjudged an Habitual Felony Offender and sentenced to twenty years in prison at hard labor.
The alleged criminal episode giving rise to this prosecution began when a female confidential informant, Adrianne Jackson, went to the apartment of a female acquaintance, Jewell Blakley, for the purpose of purchasing heroin. Upon arrival Jackson informed Blakley of her mission; whereupon Blakley called to a man upstairs and advised him that she had a customer who wanted to cop one bag right then. A man appeared, identified himself as "Scoop" and sold Jackson one packet of heroin for ten dollars. Jackson observed the man for approximately one minute.
Appellant contends the trial court erred: 1) in allowing the prosecutor to improperly impeach both the appellant and his key witness, 2) in allowing the prosecutor to make improper prejudicial statements during closing argument and 3) in refusing to allow appellant's wife to testify to corroborate appellant's alibi defense, and 4) in not allowing defendant to interview the jurors. While we might be persuaded to overlook any one of the errors about which appellant complains, the totality of the circumstances in this case leads us to believe the appellant was not afforded a fair trial.
A reversal of this case is made more difficult because of the failure of the Public Defender to timely object to many of the improprieties now charged against the prosecutor. However, if the errors complained of destroy the essential fairness of a criminal trial, they cannot be countenanced regardless of the lack of objection.
Appellant's first assertion of error has to do with the prosecutor's cross-examination of the appellant. Without quoting the entire dialogue between the prosecutor and appellant, suffice to say that the prosecutor asked appellant "... how many crimes have you been convicted of?", to which the appellant answered, "To my recollection, one." The prosecutor then asked again, "How many times?" and appellant continued to answer, "One." Finally, the prosecutor directed appellant's attention to a guilty plea he entered before The Honorable John Reed and asked how many Counts he had been convicted of. Appellant said, "One." However, the prosecutor persisted and asked again, "Didn't you plead guilty to both counts?" Appellant said, "No, I didn't. If I did, I didn't understand it like that." Finally, the prosecutor said, "... tell us unequivocally if you can whether you were convicted of one or two counts. You understand you're under oath now, don't you?" Defendant responded, "... it's possible that I could have been convicted of two, without understanding it."
At a sidebar conference during this interrogation, the prosecutor advised the court and appellant's counsel that appellant had been convicted in the Federal District Court on two separate and different deliveries of heroin, that he pleaded guilty to both counts and, therefore, he had been convicted of two separate crimes. When appellant's counsel suggested the proper way to impeach appellant on this point was to bring in the record, the prosecutor made the not so veiled threat that, if appellant persisted, he would likely be up for perjury next.
During the State's closing argument the prosecutor used the foregoing colloquy in the following fashion:
"Now, he got on the stand, first of all, and he told you  well, first of all, he said he'd just been convicted of a crime one time. And then after a little cross examination he says; `Well, I'm not sure. Maybe it could have been two crimes. I was charged with two crimes. I might have been convicted of two crimes.'

*875 "He hedged. He was not frank when he was asked the question. His demeanor, I suggest to you, was less than that of a credible witness... ." (Tr. 189-190)
The problem with this interrogation and argument is that the truth of the matter is appellant had only been convicted of one crime. When the State finally obtained a copy of the appropriate record in order to furnish it to the court at appellant's sentencing, it became quite apparent the prosecutor had (no doubt in good faith, but improperly) forced appellant to incorrectly concede he may have been convicted twice. It seems to us that before a prosecutor sets about to aggressively cross-examine a witness about his criminal record, implying as was done here, that the defendant had additional convictions, he must be prepared to produce the record to back up the implication and not leave the jury with innuendoes or worse which improperly prejudice the defendant. As the First District Court of Appeal said in Thorpe v. State, 350 So.2d 552 (Fla. 1st DCA 1977):
"... But the prosecutor who so cross-examines should be prepared to prove the facts concerning prior convictions. Houston v. State, 337 So.2d 852 (Fla. 1st DCA 1976). And when the prosecutor frames his questions to suggest as a fact that the accused was previously convicted of a certain offense, and the inference is false, the trial court must at least emphatically charge the jury to dispel the inference. Other remedies may be necessary if a corrective instruction is ineffective or if a prosecutor knowingly or recklessly plants a false inference."
Adverting once again to the factual situation, appellant's position was that he was not the person who sold the heroin to Jackson, the confidential informant. Appellant's eyewitness, Blakley, corroborated that story. When the prosecutor commenced his cross-examination of Blakley, he asked her if she had sold Jackson some heroin. That question can serve no purpose but to attack the character of the witness and impeach her credibility. Yet the cases are legion which recognize the rule that evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. Fulton v. State, 335 So.2d 280 (Fla. 1976). Having set witness Blakley up with the foregoing question about selling heroin, the prosecutor then attempted to make her admit it by calling her attention to a plea she entered before another judge. As if that were not enough, having painted the witness as a heroin pusher, the prosecutor then asked Mrs. Blakley if that was how she made her living. Upon receiving a negative answer, the prosecutor asked, "You're a prostitute, aren't you?" When she denied that, she was asked, "But do you deny that you have been convicted of prostitution?" Appellant's counsel finally objected, but the court overruled the objection. The prosecutor continued and asked Blakley if she had been convicted of prostitution so many times she could not remember. The question was never answered. Surely by now, with the numerous Florida cases delineating the parameters of impeachment of a witness for conviction of a crime, all trial lawyers should be familiar with the limitations on such interrogation. Here, the situation was aggravated because Blakley was not just an ordinary witness; she was an eyewitness to the entire criminal transaction.
The prejudice occurring from the State's improper cross-examination of appellant and his eyewitness was further compounded in the prosecutor's closing argument relative to witness Blakley:
"Now, he brought in this Jewell Blakley, admittedly a prostitute, admittedly a woman who has sold heroin to the same agent, A.W. Jackson, at the same location, 524 West Jackson Street, here in Orange County, and a woman who has admittedly been convicted of crimes so many times that she can't even remember. And I tell you, ladies and gentlemen, that she is an incredible witness, and she is not worthy of your belief. She is a liar, clear and simple." (T. 192-193)
*876 The prosecutor's parting shot on the question of the credibility of the State's witnesses versus the appellant's was:
"Now, you heard our case, and then you heard his case. You heard his witnesses, his prostitute, heroin pusher, convicted so many times she cannot count; who would think nothing of getting up on that stand and telling a lie for her buddy, Fred Dukes.
"You heard his testimony, and you heard his criminal convictions..." (T. 227)
Thus, the State clearly violated the rules relative to the impeachment of witnesses for prior criminal convictions and then laced its closing argument with stinging comment based upon the improper evidence so adduced.
Finally, the State's closing argument was also subject to criticism in that it violated Canon 7, DR7-106 of the Code of Professional Responsibility. In several instances the prosecutor asserted his personal opinion as to the credibility of witnesses.
We need not resolve appellant's assertion of error in refusing to allow his wife to testify as an alibi witness because it is not likely to recur upon a new trial. Also we find no error in the court's refusal to allow appellant to interview the jurors.
In view of the foregoing, we feel the ends of justice require that appellant be granted a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
ANSTEAD and LETTS, JJ., concur.