Harold B. SCHWARTZ and Eric Rosenbaum, Plaintiffs-Appellees,

v.

NMS INDUSTRIES, INC., Defendant-Appellant.

No. 76–3547.

United States Court of Appeals, Fifth Circuit.

June 22, 1978.

**554**

Logan Ford, Dallas, Tex., for defendant-appellant.

Larry B. Bach, Forney, Tex., for Harold B. Schwartz.

Stanley M. Kaufman, Dallas, Tex., for plaintiffs-appellees.

Before WISDOM, THORNBERRY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

"Good will," the trite shop sign remarks, "is the disposition of a pleased customer to return to the place where he has been well treated."[1] Even if courts had personal conceits, however, they would not need to encourage custom. This and other courts, without wishing to be ungracious, therefore, have developed the doctrine known as the law of the case: once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit.

As we explained in *White v. Murtha*, 5 Cir. 1967, 377 F.2d 428, 431–432:

The "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes "the law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different,

---

1. *Schwegmann Bros. Giant Supermkts. v. Eli Lilly & Co.*, 5 Cir. 1953, 205 F.2d 788, 797, *cert. denied*, 1953, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369 (Holmes, J., dissenting). *Cf. Agricultural Services Ass'n, Inc. v. Ferry-Morse Seed Co., Inc.*, 6 Cir. 1977, 551 F.2d 1057, 1070–71; *Winn-Dixie Montgomery, Inc. v. United States*, 5 Cir. 1971, 444 F.2d 677, 681; *Brooks v. C.I.R.*, 1961, 36 T.C. 1128, 1133.

controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice. (Footnotes omitted).

See *White v. Murtha, supra; see also Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America,* 5 Cir. ·1975, 509 F.2d 784, 787–788, *cert. denied,* 1975, 423 U.S. 833, 96 S.Ct. 59, 46 L.Ed.2d 52; *Terrell v. Household Goods Carriers' Bureau,* 5 Cir. 1974, 494 F.2d 16, 19–20, *cert. dismissed,* 1974, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260; *Hodgson v. Brookhaven General Hospital,* 5 Cir. 1972, 470 F.2d 729, 730; *Gulf Coast B. & S. Co. v. International Bro. of E.W., No. 480,* 5 Cir. 1972, 460 F.2d 105, 107–08; *Gorsalitz v. Olin Mathieson Chemical Corp.,* 5 Cir. 1972, 456 F.2d 180, 181, *cert. denied,* 1972, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807; *Fontainebleau Hotel Corp. v. Crossman,* 5 Cir. 1961, 286 F.2d 926, 928. None of the exceptions to its application are presented here.

In a prior opinion relating to this same controversy, *Schwartz v. NMS Industries, Inc.,* 5 Cir. 1975, 517 F.2d 925, *cert. denied,* 1976, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643, we found that the defendant, NMS, which had issued 80,750 shares of its stock to the plaintiffs, had violated a contract between the parties by failing to cause these shares to be registered for sale, and was thus guilty of breach of contract and conversion under Texas law. Having determined that the plaintiffs could have sold even the restricted stock under certain conditions pursuant to Securities and Exchange Rule 144, we concluded that plaintiffs "had a duty to mitigate their damages by selling the maximum amount of stock allowable under Rule 144 . . . [and that] their recovery should be reduced by the market value of the amount of stock they could have sold pursuant to Rule 144."

517 F.2d at 931. This appeal challenges the trial court's response to the remand for determination of the amount that plaintiffs' award ought to be reduced as a result of their failure to mitigate damages.

On remand the trial court reasoned that, because the plaintiffs had 40,375 unrestricted shares that were always eligible for sale, the defendant's action had deprived the plaintiffs only of the opportunity to sell the other fifty percent of their stock; the plaintiffs always had the privilege of selling the unrestricted shares; hence, the potential return on the sale of the restricted shares ought not mitigate damages. Alternatively, the court found that it would be unreasonable to extend the duty of sale beyond May 1, 1972, the date on which plaintiffs could *begin* selling the restricted shares under Rule 144, on the theory that a person "cannot be required to mitigate his damages beyond the last date on which they are measured."

██ Although both theories appear to be contrary to Texas law,[2] for present purposes, it matters only that they are contrary to the law of the case. In our prior opinion, we expressly determined that plaintiffs' "recovery should be reduced by the market value of stock they could have sold pursuant to Rule 144." 517 F.2d at 931. While we respect the diligence and effort the experienced and able trial judge brought to consideration of the meaning of the mandate, the trial court's only task was to determine the market value of the amount of stock that could have been sold pursuant to Rule 144 and subtract it from the judgment of $83,778.17 plus interest. The siren theory sung so sweetly by advocacy should not have wooed him from this course.

██ According to the trial court's findings, the plaintiffs could have sold all the restricted stock under Rule 144. While

---

2. See *Mallam v. Trans-Texas Airways,* Tex. App.1949, 227 S.W.2d 344, 345, and *United Artists Corp. v. Stinnett,* Tex.App.1936, 101 S.W.2d 300, 303, where the court required that the plaintiffs, who appeared to have inexhaustible supplies of a particular commodity, lease or sell the very ones that were the subject of the breach of contract to lessen the damages resulting from the breach. See *Morgan v. Young,* Tex.App.1947, 203 S.W.2d 837, 849, where the court held that the duty to mitigate may arise before the extent of damages is ascertainable.

there were S.E.C. limitations on the sale of all of the restricted stock at one time, it could have been sold conformably to the regulations in installments. Thus, all of the restricted stock could have been sold by June 13, 1973, slightly more than one year after the date of the conversion. Our prior opinion did not place any time limit on the duty to mitigate but required that recovery be reduced by the value of all the stock that could have been sold. Traditionally, the duty persists as long as damages are suffered and may reasonably be mitigated. *See, e. g., Golf City v. Wilson Sporting Goods Co., Inc.,* 5 Cir. 1977, 555 F.2d 426, 436; *Thompson v. Quarles,* Tex.App.1956, 297 S.W.2d 321; *International-Great Northern Ry. Co. v. Reagan,* Tex.App.1931, 36 S.W.2d 564, *aff'd,* Tex.1932, 49 S.W.2d 414. Here, plaintiffs were deprived of the right to sell until August 19, 1974, and, accordingly, were under a duty to mitigate until then. Because plaintiffs could have sold all the restricted stock prior to the date of judgment, we need not consider the duty, if any, to mitigate after an award has been entered.

In an appendix to its opinion, the trial court set forth the defendant's calculations that plaintiffs would have received $57,-106.25 for the stock had it been sold under the Rule. There does not appear to be a dispute as to these calculations, and, unless the trial court concludes on remand that they are mathematically incorrect, it shall reduce plaintiffs' award by that amount.

■ In actions for conversion, once a defendant satisfies a judgment based upon the value of the converted item, title passes to the defendant. *Alexander Schroeder Lumber Co. v. Minerales y Metales, S.I.T.C.,* 5 Cir. 1964, 331 F.2d 135, 138; *Southwestern Peanut Growers Assoc. v. Womack,* Tex.App.1944, 179 S.W.2d 371. However, such a result would clearly be inequitable here because the judgment is now based on the temporary loss of the right to sell the stock and not merely on the value of the stock itself. Unlike a traditional conversion action where the tortfeasor has unqualified custody of the goods, the doctrine of con-

version was utilized here only as a theory of damages for a breach of contract that temporarily deprived plaintiffs of the right to sell their stock. But, after promulgation of Rule 144, plaintiffs were not fully denied the right to sell the stock; their actual loss was merely the difference between the price they would have received if not for the restrictions and the price they could receive under Rule 144 despite the restrictions, or, based on defendant's calculations, $26,671. That loss is properly measured by the calculations we remanded for. Allowing title to pass upon satisfaction of this amount would, as the consequence of defendant's tort, allow them to purchase with approximately $26,000 (according to defendant's calculations) stock worth approximately $83,000 at the time of their tort and $57,000 under later market prices. We will not permit the fiction that defendant was guilty of "conversion" to become a judicially sanctioned actuality.

Accordingly, title to the stock will remain with plaintiffs after satisfaction of judgment. REVERSED and REMANDED for entry of judgment as directed in this opinion.