**Richard Austin GREENE, Petitioner-Appellant,**

v.

**Raymond D. MASSEY, Superintendent, Union Correctional Institution, Respondent-Appellee.**

No. 76–1719.

United States Court of Appeals, Fifth Circuit.*

June 6, 1983.

Tuttle, Circuit Judge, dissented and filed opinion.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

John T. Chandler, Fort Pierce, Fla., for petitioner-appellant.

Andrea T. Mohel, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before BROWN and TJOFLAT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHN R. BROWN, Circuit Judge:

For a very long time Richard Greene has patiently sought habeas corpus, both state and federal, for release from his life sentence for murder. Beginning over seventeen years ago, his case has seen many courts in many postures.[1] Once again we are faced with the decision as to the meaning of statements, rules, and standards—many of which are elusive and nebulous—under Florida jurisprudence. Influenced by the law of the case concepts, cumulatively all of this has slowly and carefully led us to the rather somber and agonizing conclusion, after years of trying to divine the meaning of certain decisions under Florida law, that Greene's petition for writ of habeas corpus should be denied because his conviction was reversed and a retrial ordered on the bases of evidentiary weight and the "interests of justice" rather than an insufficiency of the evidence.

## FACTS AND PROCEDURAL BACKGROUND

Richard Austin Greene was twice tried and convicted by the state of Florida for murder in the first degree. The first conviction, along with that of Greene's co-defendant, Joseph Manuel Sosa, accompanied by a sentence of death, was reversed by the Florida supreme court and a new trial ordered in *Sosa v. State,* 215 So.2d 736 (Fla. 1968) (*Sosa I*). On retrial, Greene was convicted and sentenced to life in prison.

---

1. Our research discloses eleven reported actions or decisions with regard to Greene's case. We list them in the order in which they occurred.

*Sosa v. State,* 215 So.2d 736 (Fla.1965) (*Sosa I*) (original appellate reversal of the trial verdict).

*Sosa v. Maxwell,* 234 So.2d 690 (Fla.Dist.Ct. App. 2d 1970) (*Sosa II*) (writ of prohibition).

*Sosa v. Maxwell,* 240 So.2d 640 (Fla.1970) (certiorari denied by the Florida Supreme Court).

*Greene v. State,* 302 So.2d 202 (Fla.Dist.Ct. App. 4th 1974) (*Greene I*) (appeal after retrial).

*Greene v. Florida,* 421 U.S. 932, 95 S.Ct. 1660, 1975, 44 L.Ed.2d 89 (*cert. denied* by the United States Supreme Court.)

*Greene v. Massey,* 546 F.2d 51 (5th Cir.1977) (*Greene II*) (affirmed lower court's denial of habeas corpus relief).

*Greene v. Massey,* 432 U.S. 905, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977) (*certiorari* and motion to proceed *in forma pauperis* granted).

*Greene v. Massey,* 434 U.S. 888, 98 S.Ct. 259, 54 L.Ed.2d 172 (1977) (motion *pro hac vice* for oral argument granted).

*Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (*Greene III*) (reversed 5th Circuit's denial of habeas relief and remanded with a suggestion to certify).

*Greene v. Massey,* 595 F.2d 221 (5th Cir. 1979) (*Greene IV*) (certified to Florida Supreme Court).

*Greene v. Massey,* 384 So.2d 24 (Fla.1980) (*Greene V*) (answers to certified questions).

After various appeals and collateral attacks,[2] Greene's federal habeas petition was reviewed by the United States Supreme Court, which used this case and a companion[3] to announce the principle that the Double Jeopardy Clause prohibits retrial of a defendant for the same offense where appellate reversal of the initial conviction was based upon grounds of insufficient evidence.[4]

The Supreme Court was unable to discern on what basis Greene's first conviction was in fact reversed by the Florida supreme court in *Sosa I.* The reversal might have been (i) because of insufficient evidence, (ii) in the "interests of justice," or (iii) because of trial error. The Court therefore remanded the case to us in order to determine the basis of the *Sosa I* reversal and to decide whether the basis used was constitutionally permissible. We were expressly given the option of certifying questions of state law to the Florida supreme court. 437 U.S. at 27, 98 S.Ct. at 2155, 57 L.Ed.2d at 22. Taking the Court's suggestion, which might have come from its approval of our frequent practice,[5] we certified five questions to the Florida supreme court, *Greene v. Massey,* 595 F.2d 221 (5th Cir.1979) (*Greene IV*). The Florida supreme court definitively answered only two of them, declining to reach the others. *Greene v. Massey,* 384 So.2d 24 (Fla.1980) (*Greene V*).[6]

2. *Greene I, II, and III.*

3. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

4. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (*Greene III*).

5. *See Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); *Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982); *see also* Brown, Certification—Federalism in Action, 7 Cumberland L.Rev. 455 (1977).

6. Our questions and Florida's responses follow.
 Question 1: Under Florida law, what is the effect of a per curiam opinion with a special concurrence from a majority of the Justices joining in the per curiam opinion?
 Answer: An opinion joined in by a majority of the members of the Court constitutes the law of the case. A concurring opinion does not constitute the law of the case nor the basis of the ultimate decision unless concurred in by a majority of the Court. *Lendsay v. Cotton,* 123 So.2d 745 (Fla. 3d DCA 1960); *Ephrem v. Phillips,* 99 So.2d 257 (Fla. 1st DCA 1957) (on rehearing), *cert. denied,* 101 So.2d 816 (Fla.1958).
 The situation here is unlike that in *Carter v. Sparkman,* 335 So.2d 802 (Fla.1976), where a majority of the Court joined in both the opinion of Justice Roberts and the concurring opinion of Justice England. In *Sosa v. State,* 215 So.2d 736 (Fla.1968), once the three members of the Court who joined in the special concurring opinion joined in the per curiam opinion, that opinion became the majority opinion of the Court in that case. The special concurring opinion has no precedential value and it cannot serve to condition or limit the concurrence in the per curiam opinion by the three who joined in the special concurring opinion.
 There is a procedure by which those who joined in the special concurring opinion would not have been bound by the language of the per curiam opinion. Had there simply been entered a judgment of reversal and a remand for a new trial with each of the justices concurring for the reason stated in separate opinions, then none would be bound by any opinion except that in which he joined. In that event, however, there would have been a judgment by the Court disposing of the case, but no opinion of the Court. In contrast, here there was a per curiam opinion which gained a majority and this opinion constitutes the only opinion of the Court.
 Question 2: Under Florida law, what weight, if any, is to be attached to a Florida District Court of Appeal's interpretation of a decision of the Supreme Court of Florida?
 Answer: As noted by the Fifth Circuit Court in its certification opinion, Greene and his codefendant unsuccessfully sought a writ of prohibition to prevent a retrial upon reversal of his conviction by this Court in *Sosa v. State,* 215 So.2d 736 (Fla.1968). Their argument that such a retrial would violate the double jeopardy clause was rejected by the trial court and the District Court of Appeal, Second District, in *Sosa v. Maxwell,* 234 So.2d 690 (Fla. 2d DCA 1970). On certiorari from the district court decision, this Court declined to exercise its jurisdiction. *Greene v. Maxwell,* 240 So.2d 640 (Fla.1970). At that point the decision of the district court became the law of the case with respect to the double jeopardy claim, at least insofar as the courts of the State of Florida are concerned. As a result, upon appeal from their conviction on retrial, the District Court of Appeal, Fourth District, properly declined to reconsider the same double jeopardy claim on the basis

BASIS FOR THE SOSA I REVERSAL

In *Sosa I,* four of a total of seven justices on the supreme court of Florida joined in a brief per curiam opinion reversing Greene's conviction and remanding for a new trial:

> PER CURIAM.
>
> After a careful review of the voluminous evidence here we are of the view that the evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree, and that the interests of justice require a new trial. The judgments are accordingly reversed and remanded for a new trial.
>
> It is so ordered.

215 So.2d at 737. A plurality of three of those four justices also joined in a lengthy special concurrence. The concurrence

> the prior district court decision was res judicata. *Sosa v. State,* 302 So.2d 202 (Fla. 4th DCA 1974).
>
> Although the district court of appeal is without authority to overrule or modify either conclusions of fact or interpretation of law reached by this Court, it may in subsequent proceedings pass on issues which have not necessarily been determined and become the law of the case. *Goodman v. Olsen,* 365 So.2d 393 (Fla. 3d DCA 1978). In this case the District Court of Appeal, Second District, interpreted our original decision in *Sosa v. State,* 215 So.2d 736, in order to adjudicate Greene's double jeopardy claim which had not been previously decided by this Court. Upon this Court's denial of certiorari, the district court's decision became the law of the case. Accordingly, in any subsequent proceeding on the same case, the decision of the District Court of Appeal, Second District, at 234 So.2d 690, interpreting our original opinion in *Sosa v. State,* 215 So.2d 736, is controlling in Florida with respect to the double jeopardy issue.
>
> Question 3: Under Florida law, what is the legal significance of a reversal "in the interests of justice"?
>
> Answer: We have already stated that the decision of the District Court of Appeal, Second District, constitutes the law of the case. Since under the circumstances a response to the question posed would not be "determinative of the cause," we decline to undertake an academic discussion of the significance of a reversal "in the interests of justice." *See* § 25.031, Fla.Stat. (1979), and Fla.R.App.P. 9.510.

stressed the presence of trial errors as the basis for reversal.

As the Supreme Court of the United States observed in *Greene III,* the interpretation of *Sosa I* is seemingly

> confused by the fact that three of the four justices who joined in the per curiam disposition expressly qualified their action by "specially concurring" in an opinion which discussed only trial error. One could interpret this action to mean that the three concurring justices were concerned simply with trial error and joined in the remand solely to afford Greene and Sosa a fair, error-free trial—even though they were satisfied that the evidence was sufficient to support the verdict. A reversal grounded on such a holding, of course, would not prevent a retrial. See *Burks,* ante [437 U.S.], at 15–16, 57 L Ed

> Question 4: Under Florida law, what is the precedential effect of a holding in which only a plurality of justices join?
>
> Answer: We do not believe that the precedential effect of a holding in which only a plurality of the justices join is at issue here since a majority of the justices of the Court did in fact join in a majority opinion. Therefore, we do not address this question.
>
> Question 5: Upon what grounds did the Supreme Court of Florida reverse the convictions in *Sosa v. State,* Fla., 1968, 215 So.2d 736?
>
> (a) Was the reversal solely on the grounds of insufficient evidence? or
>
> (b) Was the reversal solely on the grounds of trial error? or
>
> (c) Was the reversal based upon a combination of (a) and (b)?
>
> (d) If not (a), (b), or (c), upon what grounds was the reversal based?
>
> Answer: We decline to revisit our original decision in *Sosa v. State,* 215 So.2d 736, by delving behind the face of the per curiam opinion in an attempt to define more clearly the intent of this Court in that decision. Greene and his codefendant had sought, and were denied, direct review of the decision of the District Court of Appeal, Second District, in their petition for certiorari to this Court. It would not now be appropriate for us to play the role of advocate in second guessing our predecessors in their reasons for denial of the writ. All points of law which have been adjudicated become the law of the case and are, except in exceptional circumstances, no longer open for discussion or consideration in subsequent proceedings in the case. *Strazzulla v. Hendrick,* 177 So.2d 1 (Fla.1965).

2d 1, 98 S Ct 2141 [at 2149]; *United States v Tateo,* 377 US 463, 465, 12 L Ed 2d 448, 84 S Ct 1587 [at 1588] (1964). The problem with this interpretation is that the opinion concludes by expressly stating that the three concurring justices had "agreed to the Per Curiam order . . . ." When the concurrence is considered in light of the language of the per curiam opinion, it could reasonably be said that the concurring justices thought that the *legally competent* evidence adduced at the first trial was insufficient to prove guilt. That is, they were of the opinion that once the inadmissible hearsay evidence was discounted, there was insufficient evidence to permit the jury to convict.

437 U.S. at 25–26, 98 S.Ct. at 2155, 57 L.Ed. at 21–22 (notes omitted).

Because we certified to the Florida supreme court, however, there is no longer any confusion about the deference owed to the majority per curiam opinion. We now know that under Florida law, the *Sosa I* plurality concurrence "has no precedential value and it cannot serve to condition or limit the concurrence in the per curiam opinion by the three who join the special concurring opinion."[7] 384 So.2d at 27. The per curiam opinion, therefore, "constitutes the only opinion of the court." *Id.*

But the meaning of the per curiam opinion itself is not easily determined. That opinion mentions both that "evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degreee" and that reversal and a new trial should be had in the "interests of justice." 215 So.2d at 737. Thus, the Florida supreme court could have reversed Greene's first trial on either basis. The present Florida supreme court felt ill-equipped directly to tell us in certification answers[8] what the *Sosa I* court in-

tended by stating that "[w]e decline to revisit our original decision in [*Sosa I*], by delving behind the face of the per curiam opinion in an attempt to define more clearly the intent of this [c]ourt in that decision." 384 So.2d at 28.[9]

Viewing the *Sosa I* opinion by itself, the United States Supreme Court read its bare words as suggesting that the basis was that of insufficiency of the evidence:

> If we were confronted only with the per curiam opinion of the Florida Supreme Court, reversal in this case would follow. The per curiam disposition, standing by itself, leaves no room for interpretation by us other than a majority of the state supreme court was "of the view that the evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree. . . ." By using the precise terminology "lacking in establishing beyond a reasonable doubt," the highest court in Florida seems to have clearly said that there was insufficient evidence to permit the jury to convict the petitioner at his first trial. The dispositive per curiam opinion makes no reference to the trial errors raised on appeal. Viewed in this manner, the reasoning enunciated in *Burks* would obviously compel the conclusion that Greene's second trial violated the Double Jeopardy Clause. 437 U.S. at 24–25, 98 S.Ct. at 2154–2155, 57 L.Ed. at 21 (emphasis supplied).

Deference to the Supreme Court's reading of *Sosa I* would be a matter of course if such an isolated reading of *Sosa I* were required. But deference to this reading is not mandated in this case because of the marvelous device of certification. *See* note 5, *supra.* The *Sosa I* opinion cannot be read in a vacuum, as the United States Supreme Court recognized by remanding to us with the permissive suggestion to certify. Developments in *Sosa I* were revealing.

---

**7.** *See* note 6, *supra,* Question and Answer 4.

**8.** *Id.,* Question and Answer 5.

**9.** The Florida supreme court also stated in *Greene V* that "It would not now be appropriate for us to play the role of advocate in second

guessing our predecessors in their reasons for denial of the writ." 384 So.2d at 28. We observed in our certifying opinion, *Greene IV,* that "of the Supreme Court of Florida justices who decided *Sosa I,* none is on the court today." 595 F.2d at 222, n. 1.

Subsequent to *Sosa I,* the Florida courts themselves were confronted with the question of the interpretation of that per curiam opinion. Prior to their second trial, Greene and Sosa sought a writ of prohibition, arguing that *Sosa I* was based upon insufficiency of the evidence and that retrial was therefore barred by the Double Jeopardy Clause. The Florida trial court refused to issue the writ and Greene and Sosa sought review in the Second District Court of Appeal in Florida. In *Sosa v. Maxwell,* 234 So.2d 690 (1970) (*Sosa II*), the Second District Court of Appeal denied the writ of prohibition explicitly basing the denial on its reading of *Sosa I:*

> The relators have not made a clear showing that the reversal by the Florida Supreme Court in this case was based on insufficiency of the evidence to establish an essential element or elements of the crimes charged. Rather, the reversal in this case appears to be based on a finding that the evidence, though technically sufficient, is so tenuous as to prompt an appellate court to exercise its discretion and, in the interest of justice, grant a new trial.

234 So.2d at 691 (note omitted). Greene then sought certiorari from the Florida supreme court, which was denied without opinion. 240 So.2d 640 (Fla.1970).

The Supreme Court therefore felt that *Sosa II* would have a significant effect on a federal court's interpretation of the *Sosa I* per curiam opinion, and thus directed us on remand to determine "the amount of weight that Florida law would afford to a district court of appeal's interpretation of its supreme court's action." 437 U.S. at 26 n. 10, 98 S.Ct. at 2155 n. 10, 57 L.Ed. at 22 n. 10. As stated previously, we certified this and other questions to the supreme court of Florida. The Florida supreme court answered our second question, stating that as of the time that certiorari was denied, 240 So.2d 640, in *Sosa II*

the decision of the [second] district court [of appeal] became the law of the case with respect to the double jeopardy claim, at least insofar as the courts of the State of Florida are concerned. As a result, upon appeal from their conviction on retrial, the District Court of Appeal, Fourth District, properly declined to reconsider the same double jeopardy claim on the basis the prior district court decision was *res judicata.*

Question and Answer 2, note 6, *supra;* 384 So.2d at 27 (emphasis supplied).

 This answer, especially the first part of the quoted passage, indicates that *Sosa II*'s interpretation of *Sosa I* is of controlling weight under Florida law. The law of the case applies to all questions "discussed" or decided.[10] The second certification answer unmistakably informs us that the district court of appeal's interpretation of the per curiam opinion in *Sosa I* binds all courts of the state of Florida. Since we are considering this case on habeas and the question turns solely upon a determination of state law, it binds us as well. Thus, the Florida district court of appeal's reading of the Florida supreme court's per curiam opinion, as instructed by the latter court, constitutes the law of the case. We therefore conclude that the *Sosa I* per curiam opinion cannot be read by itself, but must be interpreted as the Florida district court of appeal determined in *Sosa II.* The reversal of Greene's first conviction was therefore not based on insufficiency of the evidence, but instead the reversal was based on the weight of the evidence and the "interests of justice".

### ENTER TIBBS

However, on the eve of preparation of an opinion in the cause, our attention was directed to yet another development in Florida jurisprudence which might possibly have a bearing on our disposition of Greene's case. In *Tibbs v. State,* 397 So.2d 1120 (Fla.1981) (*Tibbs II*),[11] Florida ruled that

---

**10.** *Goodman v. Olsen,* 365 So.2d 393, 396 (Fla. Dist.Ct.App. 3d 1978) (cited by the Florida Supreme Court in its certification answers). *See* note 5, *supra,* answer 2.

**11.** In this case, the Florida supreme court affirmed the district court of appeal's reversal of the trial court's dismissal of the indictment against Tibbs made on the basis that a retrial of

appellate reversals based on evidentiary weight did not bar retrial of a defendant. To understand the significance of *Tibbs II* to this case, one must revisit the Florida supreme court's decision. In discussing two state district courts of appeal cases in the whole body of Florida law which explicitly recognized that evidentiary weight could serve as a basis for appellate reversals, *Sosa II* and *Smith v. State,* 239 So.2d 284 (Fla. Dist.Ct.App.2d 1970), the Florida supreme court concluded that these decisions were probably in error. 397 So.2d at 1125.

The case which most concerns us here is *Sosa II*—the case by which we are governed in this action because the Florida supreme court has told us that it constitutes the law of the case. Answers 2–3, 384 So.2d at 27. The precise passage in *Tibbs II* which implicates our decision in the case at bar is as follows:

> *Sosa v. Maxwell* [*Sosa II*] was preceded by *Sosa v. State,* 215 So.2d 736 (Fla. 1968) [*Sosa I*], where we had reversed the defendants' convictions and remanded for a new trial because 'evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree....' *Id.* at 737. In *Sosa v. Maxwell* [*Sosa II*], the district court denied a

the defendant, which had been ordered by the supreme court of Florida in *Tibbs v. State,* 337 So.2d 788 (Fla.1976) (*Tibbs I*), would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. The trial court considered dismissal appropriate in light of the United States Supreme Court decision in *Burks* and *Greene III.* The Florida supreme court based its decision on the grounds that its reversal of the defendant's conviction in *Tibbs I* was based on evidentiary weight rather than evidentiary insufficiency. The Florida supreme court ruled that retrial was not barred by double jeopardy precepts when a reversal was based on the weight of the evidence as opposed to its sufficiency. This distinction thus distilled the United States Supreme Court affirmed Florida's decision in *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (*Tibbs III*).

**12.** The court's note 13 referred to its second answer on certification. 384 So.2d at 27.

writ of prohibition to bar retrial and characterized our earlier reversal as going to the weight, not sufficiency, of the evidence. We later denied certiorari review without opinion. *Sosa v. Maxwell,* 240 So.2d 640 (Fla.1970). Our denial of certiorari, of course, was not an adjudication on the merits although *it made the district court's Sosa [II] decision the 'law of the case.'[ ] Our original opinion persuasively suggests, however, that the conviction actually was reversed because the state failed to carry its burden of proof— that is, the reversal was based on the insufficiency of the evidence. The district court, it now seems, simply interpreted our decision wrongly.*

397 So.2d at 1125 (footnote omitted) (emphasis supplied).[12]

■ But there is still more to come. In the same opinion, the Florida supreme court indicates that the weight cases upon which the district court of appeal relied in reversing the trial court's decision to dismiss Tibbs' indictment, *see* note 11, *supra,* had included the statement that a new trial was being ordered in the "interests of justice" [13] pursuant to Florida Rule of Appellate Procedure 9.140(f) (1977), which states:

**13.** In *Greene III* the United States Supreme Court noticed that the Florida district court of appeal decision in *Sosa II* interpreted the Florida supreme court's original per curiam opinion, reversing the defendants' conviction and ordering a new trial to be in the "interests of justice." 437 U.S. at 22 n. 2, 98 S.Ct. at 2153 n. 2. The Court declined, however, to reach the issue of whether a retrial ordered on such grounds implicated the Double Jeopardy Clause. *Id.* at 26 n. 10, 98 S.Ct. at 2155 n. 10.

In *Tibbs III,* however, the Court lends its tacit approval to a retrial ordered on such grounds. 457 U.S. at 38 n. 12 and at 43 n. 18, 102 S.Ct. at 2216 n. 12 and at 2219 n. 18, 72 L.Ed.2d at 659 n. 12 and at 662 n. 18. Accordingly, we are required to construe this approval as permitting a retrial on grounds of "the interest of justice" and evidentiary weight. To the extent that *Sosa II* relied on these grounds to order a new trial, that decision is clearly correct and does not offend the Double Jeopardy Clause.

In the interest of justice, the court may grant any relief to which any party is entitled. In capital cases, the court shall review the evidence to determine if the interest of justice requires a new trial, whether or not insufficiency of the evidence is an issue presented for review.

Since Rule 9.140(f) gives such authority to an appellate court in Florida, a new trial ordered in the "interests of justice" "is neither foreclosed, nor compelled, by double jeopardy principles." 397 So.2d at 1126. The Florida supreme court stated that this was the time honored rule applied by appellate courts in Florida to correct "fundamental injustices" without regard to "evidentiary shortcomings, which occurred at trial." *Id.*

Then came *Tibbs III* in which the Supreme Court had an opportunity to consider whether an appellate reversal of a conviction based on the "interests of justice" violated the Double Jeopardy Clause. *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (*Tibbs III*). The Court's opinion discloses not even a hint of disapproval. In fact, the Court took formal notice of Florida appellate Rule 9.140(f) and did not disapprove of it. 457 U.S. at 36 n. 8, 102 S.Ct. at 2215 n. 8, 72 L.Ed.2d at 658 n. 8. Furthermore, the Court, in demonstrating the traditional reasonableness of such an approach, emphasized that F.R. Crim.P. 33 authorizes a new trial "if required in the interest of justice" and that many federal courts have set aside convictions that are against the weight of the evidence by invoking this rule. *Id.* 457 U.S. at 38 n. 12, 102 S.Ct. at 2216 n. 12, 72 L.Ed.2d at 659 n. 12.

Finally, Rule 9.140(f) of the Florida Rules of Appellate Procedure allow an appellate court in capital cases to review the evidence to determine if in the "interests of justice" a new trial is required, *regardless* of evidentiary considerations.[14] Thus, regardless of any other ground the reversal of Greene's conviction was based upon, Florida law *requires* an appellate court to review the evidence to determine whether or not the "interests of justice" require a new trial. This comes squarely within legal bounds which Florida state courts have often followed and does not in any way offend double jeopardy principles. *See, e.g., Wright v. State,* 348 So.2d 26 (Fla.Dist.Ct.App. 1st 1977); *In re Tierney,* 328 So.2d 40 (Fla.Dist. Ct.App. 4th 1976); *Kohn v. State,* 289 So.2d 48 (Fla.Dist.Ct.App. 3d 1974); *Cleveland v. State,* 287 So.2d 347 (Fla.Dist.Ct.App. 3d 1973).

Other cases have granted new trials in the "interests of justice" without expressly citing Rule 9.140(f). *Dukes v. State,* 356 So.2d 873 (Fla.Dist.Ct.App. 4th 1978); *Ferber v. State,* 353 So.2d 1256 (Fla.Dist.Ct. App. 2d 1978); *McClain v. State,* 353 So.2d 1215 (Fla.Dist.Ct.App. 3d 1977). As a consequence, we do not accept petitioner's invitation for us to grant his habeas petition in light of the Florida supreme court's suggestion in *Tibbs II* that *Sosa II* was wrongly decided. 397 So.2d at 1125.

■ We are inclined, moreover, to apply the law of the case doctrine to this case in light of the uncertainties stemming from *Sosa I.* While we are mindful that the law of the case doctrine is a "discretionary rule of practice," *United States v. United States Smelting, R & M Company,* 339 U.S. 186, 199, 70 S.Ct. 537, 544, 94 L.Ed. 750, 761 (1950), and "is not an inexorable command," *White v. Murtha,* 377 F.2d 428, (5th Cir. 1967), and that a court has "undoubted power to overrule [its] prior decision" in a case, *Lincoln National Life Insurance Com-*

---

**14.** Rule 9.140(f) is a recodification of the same rule that was effective at the time of Greene's conviction. Fla.R.App.P. 6.16(b) (1965). Old Rule 6.16(b) stated:

> Upon an appeal by the defendant from the judgment the appellate court shall review the evidence to determine if it is insufficient to support the judgment where this is a ground of appeal. Upon an appeal from the judg-

ment by a defendant who has been sentenced to death the appellate court shall review the evidence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is a ground of appeal or not.

It is clear that this rule is practically identical to the present rule 9.140(f) discussed in *Tibbs II* and *III.*

*pany v. Roosth,* 306 F.2d 110, 113 (5th Cir. 1962) (en banc), we must face the awesome conclusion that "we are a part of a system of courts of law", *Id.,* and, as a result, views of judges will not always be the same for all time. The law of the case doctrine has the virtue of bringing finality to litigation and "stability in the law—a sort of permanence and sureness in decision apart from the make-up or composition of the particular tribunal so far as the person of the judges is concerned." *Id.*

We believe that this principle is the one firmly embraced by the Florida supreme court in its fifth answer to our certification questions when it declined to delve "behind the face of the per curiam opinion in an attempt to define ... the intent" of the members of the Florida supreme court who decided *Sosa I,* none of whom was on the subsequent certifying court. 384 So.2d at 28. Thus, the supreme court of Florida in *Greene V* determined that the district court of appeal's interpretation of its opinion was—whether right or wrong—the law of the case until altered, not just criticized by the Supreme Court. We cannot ignore this. We are of the view that the principal holding in *Sosa II* is deserving of and entitled to repose. Litigation of habeas claims would be virtually endless if everytime there was a change in state law, or composition of a court, which may subsequently criticize or come close to implicitly overruling a previous decision, a habeas petitioner could come into federal court and declare that he was being held in violation of the law.

Equally persuasive to us is the petitioner's own characterization of the passage in *Tibbs II* which criticizes the Florida district court of appeal's holding in *Sosa II.* The petitioner concedes, as he must, that the passage in *Tibbs II* which criticizes *Sosa II* is merely *dicta,* which does not and cannot overrule the Florida supreme court's answer to us that *Sosa II must* be regarded as the law of the case. Nor can we in the face of Florida's positive declaration that *Sosa II* is the law of the case, construe this *dicta* to overrule *Sosa II,* since *Tibbs II* is an unrelated case, involving neither the same parties nor the same facts. Indeed, *Tibbs II* was a case where the parties, the facts, and the time were all different and there were different considerations before the court. Neither Greene nor Sosa was in anyway connected with the Tibbs litigation. Thus, Tibbs cannot possibly be considered a "subsequent proceeding," *Strazzulla v. Hendrick,* 177 So.2d 1 (Fla.1965), in order to bar operation of law of the case concepts. It was an entirely separate proceeding in which the Florida supreme court could have overruled *Sosa II,* but did not do so.

Petitioner seeks to avoid operation of the law of the case doctrine to his situation by pointing out that the law of the case doctrine has three built-in exceptions. He asserts that the law of the case doctrine should not preclude a court from granting relief or correcting an injustice when (i) the evidence on a second or third trial was substantially different, (ii) controlling authority has since made a contrary decision of the applicable law, (iii) or the previous decision was clearly erroneous and would work a manifest injustice. *Schwartz v. NMS Industries, Inc.,* 575 F.2d 553, 554–55 (5th Cir.1978).

Petitioner's case fits neither exception. In the first place, as we have just iterated, *Tibbs II* is a separate case with separate parties and separate facts, tried before a separate court for a separate crime at a separate time. Second, *Tibbs II* does not constitute a "change in the applicable law" with regard to Greene's case. *Sosa II* characterizes the appellate reversal of Greene's conviction as based on evidentiary weight and the "interests of justice". *Tibbs II* approves of both, as does *Tibbs III.* Greene's conviction was reversed on those grounds. There has thus been no "change in the applicable law." Moreover, the language in *Tibbs II* does not conclusively rule out, or even consider the possibility that the reversal in *Sosa I* was based on considerations other than evidence—lacking in weight or sufficiency—such as the "interests of justice." Third, manifest injustice will not result because we have given *Sosa II* controlling weight *as we are required to do* in view of Florida's answers to our certi-

fication questions. Finally, we observe that the doctrine of the law of the case dictates that "once a case has been decided on appeal, the rule adopted is to be applied, *right or wrong,* absent exceptional circumstances in the disposition of the law suit." *Schwartz v. NMS Industries,* 575 F.2d at 554; (emphasis supplied). *Tibbs II* does not supply those exceptional circumstances.

## CONCLUSION

Because the Florida Supreme Court has told us that *Sosa II* was determinative of the issue in this case, we must view the appellate reversal of Greene's conviction as based on evidentiary weight and the "interests of justice." Finding ourselves bound by Florida's interpretation and binding effect of its own law, we must deny Greene's petition for habeas relief.[15]

PETITION DENIED. AFFIRMED.

TUTTLE, Circuit Judge, dissenting:

With deference, I dissent. I agree with everything stated in the majority opinion down to and including the proposition that the decision of the Florida District Court of Appeal, Second District, 234 So.2d 690 (*Sosa II*), is the law of the case. My disagreement comes from the answer of the majority to the question whether this case does not present an exception to the rule that courts should ordinarily follow the law of the case as binding. In fact, we come right down to the third exception stated in the majority opinion as "(i) or the previous decision was clearly erroneous and would work a manifest injustice," citing *Schwartz v. NMS Industries, Inc.,* 575 F.2d 553, 554–55 (5th Cir.1978).

With all due deference I am of the opinion that not only the United States Supreme Court but the Florida Supreme Court has now held contrary to *Sosa II,* which we now apply as the law of the case. I am therefore of the opinion that the decision in *Sosa II* was clearly erroneous and

that the application of its holding "would work a manifest injustice."

The Supreme Court has already had one look at *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). There, with the language of the Florida Supreme Court's per curiam opinion before it, the Court said:

If we were confronted only with the *per curiam* opinion of the Florida Supreme Court, reversal in this case would follow. The *per curiam* disposition, standing by itself, leaves no room for an interpretation by us other than that a majority of the state supreme court was "of the view that the evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree...." By using the precise terminology "lacking in establishing beyond a reasonable doubt" the highest court in Florida seems to have clearly said that there was insufficient evidence to permit the jury to convict petitioner at his first trial. This positive *per curiam* opinion makes no reference to the trial errors raised on appeal. Viewed in this manner, the reasoning enunciated in *Burks* would obviously compel the conclusion that Green's second trial violated the Double Jeopardy Clause.

*Id.* (footnote omitted).

The Court then noted that the situation was confused by the fact that three of the four justices who joined in the per curiam disposition expressly qualified their action by "specially concurring" in an opinion which discussed only trial error. The Court thus remanded the case to us for reconsideration and left open the matter of certifying a question to the Florida Supreme Court. We, of course, did this, and the first certified question was as follows: "Under Florida law, what is the effect of a per curiam opinion with a special concurrence from a majority of the justices joining in the per curiam opinion?"

**15.** Nothing we say negatives whatever right Greene has to repair to the Florida courts for relief. In light of the *dicta* in *Tibbs II* concerning *Sosa II* and the Supreme Court's approval of conviction reversals in the "interests of justice" in *Tibbs III,* this remains a question of state rather than federal law.

The Supreme Court of Florida answered as follows:

> An opinion joined in by a majority of the members of the court *constitutes the law of the case.* A concurring opinion does not constitute the law of the case nor the basis of the ultimate decision unless concurred in by a majority of the court. (Citations omitted).

Thus, the only question that had troubled the Supreme Court before remand was specifically answered by the Florida Supreme Court's answer to our question no. 1. The Florida court's answer to our question concluded by saying: "Here there was a per curiam opinion which gained a majority and this opinion constitutes the only opinion of the court." The Supreme Court had already said that if that opinion was the only thing before it, it would have no alternative but to reverse Greene's second conviction.

I recognize that the Florida Supreme Court in its answer to question no. 2 stated that the District Court of Appeal's interpretation of the original decision in *Sosa v. Maxwell,* 240 So.2d 640 (1970) "became the law of the case."

I think the most that can be said for this is that we are required to accept the answer to certified question no. 2 as stating that the usual rules observed by all courts dealing with the principle of "law of the case" are to be applied to the decision of the District Court of Appeal, Second District.

This, then brings into play the question whether "the previous decision was clearly erroneous and would work a manifest injustice." I am willing to rely upon what the same Florida Supreme Court has said about *Sosa II* to the effect that it was clearly erroneous. The fact that the court said this in *Tibbs,* it seems to me, makes no difference. For in its *Tibbs* opinion, the Florida Supreme Court once again analyzed its original opinion in *Greene,* the court saying:

> Our original opinion persuasively suggests, however, that the conviction actually was reversed because the state failed to carry its burden of proof—that is, the reversal was based on the insufficiency of the evidence. The district court, it now

seems, *simply interpreted our decision wrongly.*

397 So.2d at 1125 (emphasis added).

Thus, not only does the answer to certified question no. 1 eliminate any question the United States Supreme Court had in *Greene v. Massey,* but the Florida court itself now says that it is in agreement with the United States Supreme Court as to the meaning of the original per curiam opinion standing by itself when it says: "Our original opinion persuasively suggests, however, that the conviction actually was reversed because the state failed to carry its burden of proof—that is, the reversal was based on the insufficiency of the evidence."

This leaves us then with what I consider to be a fairly sterile answer to the second certified question to the effect that *Sosa II* is the law of the case.

With all these indications that 240 So.2d 640 was erroneously decided, I have no difficulty in concluding that Greene had met the first part of the third exception, that the original case was "erroneously decided." I suppose no one could differ from the proposition that an injustice was done where a case has so clearly been erroneously decided and if correctly decided the party relying upon the exception would have had his indictment dismissed.

The extent to which the Florida court went in *Tibbs* to explain that practically all of the earlier cases which were there being analyzed by the court following its use of imprecise language had actually been decided on the basis of insufficient evidence and only two, including the *Sosa* appeal, had gone differently confirms my belief that the Florida Supreme Court in effect made what is almost a single exception to the statewide rule of construction of its opinions where it is apparent from the entire decision that there was in fact insufficient evidence to take the case to the jury. I would not hesitate to say that under such exceptional circumstances, this court should not apply the law of the case to Greene's effort to set aside his second trial.

I would grant the Writ.