467 So.2d 455 (1985)
Florencio ALVAREZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-2590.
District Court of Appeal of Florida, Third District.
April 16, 1985.
Martin Lemlich, Miami Beach, John H. Lipinski, Miami, for appellant.
Jim Smith, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before HENDRY, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Our recent admonition
"that cross-examination is the traditional and constitutionally-guaranteed method of exposing possible biases, prejudices and ulterior motives of a witness as they may relate to the issues or personalities in the case at hand. See Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974). The vital importance of full and searching cross-examination is even clearer when, as here, the prosecution's case stands or falls on the jury's assessment of the credibility of the key witnesses. See Porter v. State, 386 So.2d 1209 (Fla. 3d DCA 1980)." Wooten v. State, 464 So.2d 640 (Fla. 3d DCA 1985),
controls the present case.
The defendant was convicted of first-degree murder and was sentenced to life imprisonment with the mandatory proviso that he serve no less than twenty-five years before becoming eligible for parole. His conviction rested entirely on the testimony of Jose Chavez-Rodriguez, a supposed accomplice to the shooting, and Rolando Garcia, a supposed accessory after the fact. No other witness or physical evidence linked the defendant to the crime.
Under these circumstances, it was harmful error for the trial court to sustain the State's objections to cross-examination of Chavez designed to elicit that Chavez had served less than eight months of a thirty-two month sentence by virtue of an agreement with the State to recommend an *456 "early parole" in return for "telling the truth."[1],[2]See Watts v. State, 450 So.2d 265 (Fla. 2d DCA 1984) (error to limit defendant's cross-examination of key prosecution witness where witness was granted leniency because of his cooperation in defendant's case); Cruz v. State, 437 So.2d 692 (Fla. 1st DCA 1983) (error to restrict defense cross-examination of key prosecution witness, an accomplice, concerning offers or statements of plea negotiations made to witness); Holt v. State, 378 So.2d 106 (Fla. 5th DCA 1980) (error to preclude defense cross-examination of key prosecution witness as to details surrounding grant of immunity). See also Daniels v. State, 374 So.2d 1166 (Fla. 2d DCA 1979).
In addition, we find error in the trial court's preclusion of cross-examination of both Chavez and Garcia intended to elicit that each had been convicted of felonies in Cuba prior to coming to the United States. Concededly, it has been said that questions regarding past convictions should not be asked unless the questioner has "knowledge that the witness has been convicted of a crime and has the evidence necessary for impeachment if the witness fails to admit the number of convictions of such crimes." Cummings v. State, 412 So.2d 436, 439 (Fla. 4th DCA 1982). See Parks v. Zitnik, 453 So.2d 434 (Fla. 2d DCA 1984); King v. State, 431 So.2d 272 (Fla. 5th DCA 1983); Blasco v. State, 419 So.2d 807 (Fla. 3d DCA 1982). The requirement that the attorney have the evidence necessary for impeachment merely assures that he will not ask questions which suggest a certain set of facts in the absence of a good faith belief that those facts are true. See Smith v. State, 414 So.2d 7 (Fla. 3d DCA 1982); Dukes v. State, 356 So.2d 873 (Fla. 4th DCA 1978); Thorpe v. State, 350 So.2d 552 (Fla. 1st DCA 1977). Clearly, "it would be highly improper if [an attorney], upon receiving a negative answer to questions about past convictions, could read from an ostensibly official paper and ask defendant if he had been convicted of various and sundry crimes (which defendant might deny), while never entering an actual certified record of the defendant's former conviction into evidence." Irvin v. State, 324 So.2d 684, 686 (Fla. 4th DCA), cert. denied, 334 So.2d 608 (Fla. 1976). Enforcement of this "good faith" requirement by mandating that the record of prior convictions stand ready to come into evidence should, however, have no application to a situation where, as here, the attorney is without knowledge of the witness' prior felony convictions because the records of prior convictions, if they exist at all, are in Cuba and manifestly not accessible. The question posed by the attorney here  whether the witnesses had been convicted of felonies in Cuba prior to coming to the United States  surely cannot be said to have been asked in bad faith; it contains no known false insinuation and is not framed to suggest that the defendant was previously convicted at a certain time of a certain offense. Compare Dukes v. State, 356 So.2d 873; Thorpe v. State, 350 So.2d 552.
While we appreciate the trial court's concern that "a lot of good people were in prison in Cuba," and agree that impeachment should not be permitted in courts of this country for crimes which are purely political in nature, this concern does not justify the wholesale exclusion of prior convictions of every nature. The witnesses could have been questioned outside of the jury's presence to determine whether they had been convicted of crimes in Cuba and whether those crimes, if committed in Florida, would be considered felonies under our *457 laws. If, then, the witness admitted to a prior conviction usable for impeachment, the witness could have been asked about its existence in the jury's presence.
Reversed and remanded for a new trial.
NOTES
[1] Not only was this cross-examination proper to show that the witness' motivation was to please the State with his testimony, but the questioning was additionally relevant to impeach Chavez, who, when asked if he got paroled, replied, "No. I served my whole time."
[2] Only the uninitiated are naive enough to believe that agreements in which the prospective witness receives special consideration in return for "telling the truth" are made with a witness whose version of the facts is a story which exculpates the defendant. In fact, as all experienced prosecutors and defense attorneys know, "telling the truth" in this context is telling a version of the facts which incriminates the defendant.