576 So.2d 783 (1991)
Robert PEOPLES, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1074.
District Court of Appeal of Florida, Fifth District.
February 28, 1991.
Rehearings Denied April 4, 1991.
*785 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Pamela D. Cichon, Asst. Atty. Gen., Daytona Beach, for appellee.
PETERSON, Judge.
Robert Peoples appeals his judgment and sentence imposed following a jury verdict. Peoples was convicted of trafficking in more than four but less than fourteen grams of Dilaudid and conspiracy to traffic in the same amount of Dilaudid in violation of sections 893.135(1)(c)1 and 893.135(5), Florida Statutes (1987).
On February 27, 1988, a Rockledge police detective responded to a telephone call from a pharmacist who suspected that a customer's prescription for a narcotic was forged. Without arousing the suspicion of the customer, the pharmacist delayed filling the prescription and gave the detective time to travel to the pharmacy. The detective parked near the pharmacy and observed the actions of Peoples and two coconspirators, Virgilio and Sawyer. The surveillance culminated in the arrest of the three as they attempted to drive away after Virgilio had paid for and obtained the drugs from the pharmacist. The detective found several forged prescriptions and 19.8 grams of Dilaudid in the car occupied by the three. Peoples' fingerprint was found on one of the prescriptions.
After he was arrested and given his Miranda warning, Peoples invoked his right to be silent and to have an attorney. After making his first appearance pursuant to rule 3.130, Florida Rules of Criminal Procedure, Peoples posted bond and was released. Virgilio, who was the only one of the three unable to make bond, eventually advised police that he would cooperate and offered to allow them to record his calls to Peoples. Over a period of three days, two calls were made by Virgilio to Peoples. During the last phone conversation, Peoples told Virgilio he was sure the phone conversation was being taped since Virgilio was calling from the jail.
Sawyer testified at trial in exchange for a waiver of a minimum mandatory sentence. Sawyer testified that Peoples and one Michael Giadona were partners in the scheme and that Giadona supplied the false prescriptions. Sawyer testified that he was addicted to Dilaudid and that he had been purchasing it from the partners since 1985. The record does not reflect testimony by Virgilio other than proffered testimony to explain the manner in which the two phone conversations were recorded. Peoples' defense was that his only connection with the persons involved was that he was interested romantically in the "phone girl." Her role in the scam was to be available to respond when pharmacists called to verify prescriptions. Peoples testified that he merely accompanied Sawyer and Virgilio without knowing the purpose of the trip, that he opened the glove compartment of the car where the prescriptions were located to obtain a package of cigarettes and picked up a set of prescriptions only to take a quick look. He also testified that, nevertheless, he was not stupid and understood what the others were doing.
Peoples alleges that the trial court erred by:

*786 I. Denying his motion to suppress the evidence presented to the jury of the two taped phone conversations between Virgilio and himself.
II. Granting the state's motion in limine to preclude cross-examination regarding Sawyer's prior conviction.
III. Imposing consecutive minimum mandatory sentences for trafficking and conspiracy to traffic.
IV. Imposing a six-year minimum mandatory sentence for the trafficking charge.

I. MOTION TO SUPPRESS
Peoples cites Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to support his argument that the trial court erred by not suppressing the recording of his telephone conversations with Virgilio. In Massiah, a co-defendant decided to cooperate with government agents by permitting the installation of a radio transmitter under the front seat of his car. Massiah, who had retained a lawyer, had been indicted, arraigned, and released on bail. Thereafter, he made several incriminating statements to his co-defendant in the bugged car. The Supreme Court held that evidence of the incriminating statements should be suppressed. The Court held that, since the statements were deliberately elicited from him after he had been indicted and in the absence of retained counsel, Massiah's Sixth Amendment rights were violated.
The Massiah principle was again applied in United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), in which post-indictment incriminating statements were made by the defendant to a cellmate who was also a paid informant. Evidence of the statements was suppressed. The statements had been obtained in violation of Henry's Sixth Amendment right to assistance of counsel since they were made after indictment and while the defendant was in custody. In Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), the defendant, following his indictment, made incriminating statements to a co-defendant who had consented to be equipped with a body bug and who had been instructed not to attempt to question the defendant regarding the charges. With respect to charges for which the defendant had been indicted, the Court found a violation of the Sixth Amendment. However, the Court held admissible evidence of statements made that pertained to crimes for which the defendant had not been indicted.
The Sixth Amendment right to counsel attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The Supreme Court recently reiterated the rule that "[a]fter charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel." Illinois v. Perkins, ___ U.S. ___, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) (emphasis added). In Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), Justice O'Connor referred to the distinction between statements made before and after the filing of formal charges when she commented on the Moulton opinion:
The Court made clear, however, that the evidence concerning the crime for which the defendant had not been indicted  evidence obtained in precisely the same manner from the identical suspect  would be admissible at a trial limited to those charges... . The clear implication of the holding, and one that confirms the teaching of [United States v. Gouveia, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984)], is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges. Moreover, because Moulton already had legal representation, the decision all but forecloses respondent's argument that the attorney-client relationship itself triggers the Sixth Amendment right.
475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410, 427 (1986).
In the cases cited above, the defendants had been formally charged when the *787 suppressed statements were elicited at the instigation of the prosecuting agency. The instant case is distinguished, however, in that Peoples had not been formally charged when his statements were made. Peoples had reached the point in Florida's procedure where he had been afforded his first appearance under rule 3.130, Florida Rules of Criminal Procedure, and a non-adversary preliminary hearing under rule 3.133(a). He had not been charged by indictment or information pursuant to rule 3.140. Since he had not reached the point under federal law where adversary judicial proceedings had been initiated against him, we hold that his right to counsel under the Sixth and Fourteenth Amendments was not violated.
Peoples also claims a violation of his right to counsel under the Florida Constitution. In State v. Delgadillo, 458 So.2d 20 (Fla. 3d DCA 1984), rev. denied, 467 So.2d 999 (Fla. 1985), the defendant, apprehended with an undercover police officer, was arrested and placed in a police cruiser with the undercover officer. During the trip in the car and later that same day in jail, the defendant made incriminating admissions in the presence of the officer. The Third District ruled that there was no violation of the defendant's right to counsel under either the Florida or the United States Constitution because no such rights had attached when the statements were made. The opinion made it clear that a first appearance pursuant to rule 3.130, Florida Rules of Criminal Procedure, had not yet occurred and was not yet required when the statements had been made.
In noting that the defendant's first appearance had not been made, the Delgadillo court avoided any conflict with State v. Douse, 448 So.2d 1184 (Fla. 4th DCA 1984). In Douse, the trial court suppressed a taped telephone conversation between the defendant and a police detective who attempted to obtain information relating to the arrest by posing as a friend of a co-defendant. The call took place one day after defendant's first appearance at which he was represented by counsel. Citing rule 3.130, Florida Rules of Criminal Procedure, the Fourth District affirmed in a two-to-one decision. The court held that the taped telephone conversation should have been suppressed even though the defendant's Sixth Amendment right to counsel had not attached at the time the statements were elicited. The court relied upon article I, section 16, of the Florida Constitution and rule 3.130, Florida Rules of Criminal Procedure. The court indicated that Florida provides greater protection than federal law and concluded that the right to assistance of counsel attaches at least as early as a defendant's rule 3.130 first appearance.
We are unable to avoid conflict with Douse. The Douse court stated that the Florida Constitution guarantees the right to assistance of counsel in all criminal prosecutions. The court stated further:
Rule 3.130, Fla.R.Crim.P., in turn, states that the right to assistance of counsel attaches at least as early as the defendant's first appearance which should occur within twenty-four hours of arrest. Thus, in this case the incriminating statements made one day after Douse's first appearance were elicited after his right to counsel attached under Florida law.
Id. at 1185. While the court cites article I, section 16, of the Florida Constitution in support of its conclusion, the words found there  "to be heard in person, by counsel or both"  provide no stronger rights than are found in the Sixth Amendment to the United States Constitution where an accused has the right "to have assistance of counsel for his defense." Furthermore, the word "attaches" does not appear in rule 3.130, Florida Rules of Criminal Procedure, notwithstanding the Douse court's insistence that the rule "states that the right to assistance of counsel attaches at least as early as the defendant's first appearance... ." Id. (emphasis added).
Whether Peoples was represented by private or public counsel is irrelevant to the determination of when Peoples' right to counsel attached under the Florida Constitution. Clearly, a suspect has the right to counsel in any criminal proceeding at any time and, if entitled to appointed counsel, "when he is formally charged with an offense, or as soon as feasible after custodial *788 restraint or upon his first appearance before a committing magistrate, whichever occurs earliest." Fla.R.Crim.P. 3.111. Rule 3.130(c)(1), Florida Rules of Criminal Procedure, provides for the determination of entitlement to and appointment of counsel prior to first appearance. The abovecited rules do not accelerate the time when the right to assistance of counsel attaches so as to prohibit further police investigation utilizing surreptitious means to elicit information. These rules merely specify the point in time in the proceedings at which the state pays for counsel for those who are unable to afford private counsel.
The fact that Peoples was represented by counsel, as was his right, does not mean that his right to counsel attached. As stated by Justice O'Connor, the formation of the attorney-client relationship is not the point at which the right to counsel attaches:
More importantly, the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purpose of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any "criminal prosecutio[n]," the accused shall not be left to his own devices in facing the "`prosecutorial forces of organized society.'" By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation. For it is only then that the assistance of one versed in the "intricacies ... of law" is needed to assure that the prosecution's case encounters "the crucible of meaningful adversarial testing."
Moran v. Burbine, 475 U.S. 412, 430, 106 S.Ct. 1135, 1145-46, 89 L.Ed.2d 410, 427 (1986) (citations omitted).
Thus, although Peoples had appointed or retained counsel at the time his telephone conversation was recorded, his right to counsel had not attached. As indicated, the right to counsel attaches only when formal proceedings are initiated by way of indictment, information, arraignment, or preliminary hearing. Further, a defendant's right to counsel does not attach even though he has been afforded a first appearance pursuant to rule 3.130, Florida Rules of Criminal Procedure, and a non-adversary preliminary hearing pursuant to rule 3.133(a), Florida Rules of Criminal Procedure. Although these hearings are preliminary, neither type of hearing is adversarial for purposes of attachment of the right to counsel. In United States v. Gouveia, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), Justice Rehnquist reiterated that the right to counsel attaches when formal adversary proceedings are brought against an accused. He noted that "critical" pretrial proceedings are those "where the results of the confrontation `might well settle the accused's fate and reduce the trial itself to a mere formality.'" 467 U.S. at 189, 104 S.Ct. at 2298, quoting United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); compare Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (Preliminary hearings, that may be used to perpetuate evidence and keep necessary witnesses within the control of the state, are adversarial.) We hold therefore that, in Florida, via the rule 3.130 first appearance or via the rule 3.133(a) non-adversarial hearing, the right to counsel does not attach. In so holding, we acknowledge conflict with Douse, supra, and, to the extent it relies on Douse, with Sobczak v. State, 462 So.2d 1172 (Fla. 4th DCA 1984), rev. denied, 469 So.2d 750 (Fla. 1985).
Since Peoples' right to counsel was not violated under either the state constitution or the federal Constitution, the trial court correctly denied his motion to suppress.

II. MOTION IN LIMINE
The defendant contends that the trial court should have allowed evidence of Sawyer's fifteen-year-old conviction. On cross-examination, the defense attempted to elicit from Sawyer, the state's principal witness, testimony that he had served *789 twenty months in a federal penitentiary after his conviction for possession of heroin and marijuana in 1972. The state moved in limine to preclude examination regarding the conviction on the ground that the prior convictions were too remote in time to be admissible and that defense counsel did not have a certified copy of the judgment. While section 90.610(1), Florida Statutes (1987), precludes evidence in a civil trial of a conviction so remote in time as to have no bearing on the present character of a witness, it does not prohibit such evidence in a criminal trial. § 90.610(1)(a); see also Sponsor's Note 1979, § 90.610(1)(a). The trial court was still correct, however, in disallowing the evidence. The attorney who seeks to introduce evidence of a prior conviction should have knowledge of the prior conviction and should possess a certified copy of the judgment of conviction. King v. State, 431 So.2d 272 (Fla. 5th DCA 1983); Cummings v. State, 412 So.2d 436 (Fla. 4th DCA 1982). While defense counsel argued that neither he nor the state attorney could obtain a copy of the federal conviction, we are unwilling to relax the Cummings rule and substitute for it a rule excusing certified copies of federal convictions because they may be difficult to obtain.
We recognize the exceptional circumstances in Alvarez v. State, 467 So.2d 455 (Fla. 3d DCA 1985), rev. denied, 476 So.2d 675 (Fla. 1985), where it was held that evidence of a felony conviction in Cuba should have been admitted even though copies of the convictions were not available. Alvarez will not be applied in the instant case since, it is hoped, records of the United States have not reached the degree of inaccessibility as have Cuban records. Also, there was other incriminating evidence in the instant case. In Alvarez, the only evidence against the defendant was the testimony of the witness whom the defendant sought to impeach.

III. CONSECUTIVE MINIMUM MANDATORY SENTENCES
Peoples received two minimum mandatory terms pursuant to sections 893.135(1)(c)1, and 893.135(5), Florida Statutes (1987), for trafficking and conspiring to traffic in Dilaudid. Section 893.135(5), Florida Statutes (1987), provides for punishment for conspiring to commit an act proscribed by section 893.135(1) in the same manner as if he had actually committed the act.
Consecutive minimum mandatory sentences are not appropriate when the multiple offenses for which sentences are imposed are committed during a single continuous episode. Palmer v. State, 438 So.2d 1 (Fla. 1983). This rationale is applicable to sentences imposed pursuant to section 893.135. Vickery v. State, 515 So.2d 396 (Fla. 1st DCA 1987). In Vickery, the defendant was found guilty of trafficking in cocaine, conspiracy to traffic in cocaine, and conspiracy to traffic in cannabis. The court found that the conspiracy to traffic in cannabis was sufficiently separate and distinct from the other two offenses to permit a consecutive mandatory term of imprisonment, but the charges of trafficking and conspiracy to traffic in cocaine arose from a single transaction involving the same contraband. The offenses were not sufficiently distinct to permit consecutive mandatory sentences.
In the instant case, the testimony was in direct conflict as to Peoples' involvement in the alleged crimes. This conflict had to be resolved by the jury who found Peoples to be guilty of trafficking in four but less than fourteen grams and of conspiracy to traffic in exactly the same amount of drugs. The jury verdict does not distinguish the trafficking charge from the conspiracy charge; thus, we cannot conclude that the conspiracy was to traffic in any contraband other than that which was the basis for finding him guilty of trafficking. Since the offenses cannot be distinguished from one another, the sentences imposed appear to be for a single continuous episode, and Palmer requires that the sentences be served concurrently.

IV. IMPOSITION OF SIX-YEAR MINIMUM MANDATORY SENTENCE FOR COUNT II
The sentence for Count II, the trafficking charge, indicated the imposition of *790 a six-year minimum mandatory imprisonment pursuant to section 893.135(1)(c)(1), Florida Statutes. That subsection clearly prescribes a mandatory term of three years. The six-year mandatory term is vacated, and we remand for imposition of the correct mandatory term of three years.
AFFIRMED in part; VACATED in part; and REMANDED for resentencing.
COBB, J., concurs.
DAUKSCH, J., dissents without opinion.