612 So.2d 555 (1992)
Robert PEOPLES, Petitioner,
v.
STATE of Florida, Respondent.
No. 77851.
Supreme Court of Florida.
November 25, 1992.
Rehearing Denied February 16, 1993.
James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for respondent.
SHAW, Justice.
We have for review Peoples v. State, 576 So.2d 783 (Fla. 5th DCA 1991), in which the district court acknowledged conflict with Sobczak v. State, 462 So.2d 1172 (Fla. 4th DCA 1984), rev. denied, 469 So.2d 750 (Fla. 1985), and State v. Douse, 448 So.2d 1184 (Fla. 4th DCA 1984). We have jurisdiction. Art. V, 3(b)(4), Fla. Const. We approve the result reached by the district court below but disapprove its analysis.
On February 27, 1988, a Rockledge police detective responded to a telephone call *556 from a pharmacist who suspected that a customer's prescription was forged. The pharmacist delayed filling the prescription while the detective traveled to the pharmacy and observed the actions of Peoples and two others, Virgilio and Sawyer, from the parking lot. The three were arrested as they drove away after having the prescription filled. In their possession were 19.8 grams of Dilaudid and several forged prescriptions.
When taken to the station and read his rights, Peoples refused to answer any questions. At booking, he was told of his right to counsel and, when asked if he would like to call a lawyer of his choice, responded affirmatively and called attorney Bruce Raticoff. The following day, he attended first appearance, was declared partially indigent, and was appointed the services of a public defender. On March 4, the court relieved the public defender of representation and recognized Raticoff as attorney of record. Peoples subsequently was released on bail, and Raticoff was replaced by appointed counsel.
Before being released, Peoples told codefendant Virgilio, who could not make bail, to stay in touch with him. After Peoples' release, Virgilio advised police he would help in obtaining incriminating evidence against Peoples. Police asked if they could listen in and record his telephone conversations. Virgilio agreed and police taped calls on March 15 and 18. An information charging Peoples with trafficking and conspiracy to traffic was issued on April 21. Peoples' motion to suppress was denied, the tapes were admitted at trial, and Peoples was convicted. The district court affirmed, reasoning that under both state and federal constitutions the right to trial counsel attaches upon issuance of an indictment or information and not upon first appearance. The district court recognized conflict with Sobczak and Douse, wherein the Fourth District Court of Appeal ruled that the right to counsel attaches under the Florida Constitution at first appearance.
Peoples argues that use of the taped conversations violated both his right against compelled self-incrimination and right to trial counsel under state and federal constitutions. The State counters that no constitutional right was violated because formal charges had not yet been filed, and that even if a violation did occur it was harmless.
Pursuant to the doctrine of primacy, we examine the tapes first under our Florida Constitution. See Traylor v. State, 596 So.2d 957, 962 (Fla. 1992). Initially, we note that the privilege against self-incrimination set out in article I, section 9, Florida Constitution, protects an accused from the potentially coercive pressures of custodial interrogation. Traylor, 596 So.2d at 964-66. Because Peoples was not in custody at the time the phone calls were recorded, no section 9 privilege was implicated.
As to the right to trial counsel under article I, section 16, Florida Constitution, we announced in Traylor v. State, 596 So.2d 957 (Fla. 1992), that the right attaches at the earliest of three points set out in Florida Rule of Criminal Procedure 3.111(a):
In other words, a defendant is entitled to counsel at the earliest of the following points: when he or she is formally charged with a crime via the filing of an indictment or information, or as soon as feasible after custodial restraint, or at first appearance.
Traylor, 596 So.2d at 970 (footnotes omitted).
Thus, it is clear that Peoples' section 16 right to counsel had attached and been invoked by the time the tapes were made. Because the phone recordings could significantly affect the outcome of the prosecution, the taping constituted a crucial encounter between State and accused whereby the State knowingly circumvented the accused's right to have counsel present to act as a "medium" between himself and the State.[1]See Traylor, 596 So.2d at 968. *557 Accordingly, the taped conversations were inadmissible under the Florida Constitution.[2] We hold that once the section 16 right to trial counsel attaches and is invoked the State is barred from obtaining incriminating statements on a charged offense by knowingly circumventing an accused's right to assistance of counsel during a crucial encounter with the State.
We must now determine whether use of the tapes at trial was harmless error. The tapes themselves contained little incriminating evidence: At the time the calls were made, Peoples was aware that Virgilio was still in jail and Peoples believed the calls were being monitored. The jury had before it the following additional evidence of guilt: The statements of the police officer who observed Peoples' actions in the vicinity of the pharmacy; Peoples' fingerprint on a stolen prescription form in the getaway car; and the co-perpetrator's testimony implicating Peoples. We find beyond a reasonable doubt that the erroneous admission of the illegally obtained tapes did not affect the jury's verdict. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986).
We approve the result reached by the district court[3] below but disapprove its analysis.[4] We approve Sobczak and Douse.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Although it was Virgilio who initially offered to assist police in gathering incriminating evidence, it was the State that granted him immunity and otherwise arranged for and conducted the clandestine monitoring and taping of the uncounselled communications of its adversary. Cf. Maine v. Moulton, 474 U.S. 159, 174, 106 S.Ct. 477, 486, 88 L.Ed.2d 481 (1985) ("the identity of the party who instigated the meeting at which the Government obtained incriminating statements was not decisive or even important").
[2] Compare Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), wherein the Court held it unlawful for police to plan with a codefendant to record the defendant's calls and for the codefendant to wear a body bug in an effort to gather incriminating evidence against an indicted defendant. The Court stated:

The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right... . Thus, the Sixth Amendment is not violated whenever  by luck or happenstance  the State obtains incriminating statements from the accused after the right to counsel has attached. However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.
Moulton, 474 U.S. at 176, 106 S.Ct. at 487 (citation omitted). See also United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (unlawful for police to plan with fellow inmate to gather incriminating information on charged offense from represented defendant); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (unlawful for police to plan with codefendant to utilize bug in auto to gather incriminating evidence on charged offense from represented defendant).
[3] We decline to address the other issue raised by Peoples.
[4] The district court's conclusion that the Sixth Amendment right to counsel attaches only on indictment or information has also been rejected by this Court. See Owen v. State, 596 So.2d 985 (Fla. 1992).