725 So.2d 1164 (1998)
Eric S. BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 96-04163
District Court of Appeal of Florida, Second District.
December 16, 1998.
Scott L. Robbins, Tampa, for Appellant.
*1165 Robert A. Butterworth, Attorney General, Tallahassee, and Johnny T. Salgado, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Eric Sebastian Brown appeals his convictions for attempted first degree murder of a law enforcement officer, four counts of armed robbery with a firearm, and petit theft. Because we agree that the trial court erred in admitting testimony concerning the incriminating statements Brown made to his cellmate, Lott, we reverse.
Brown filed a pretrial motion to suppress the statements he made to Lott on the ground that the statements were elicited in violation of Brown's Sixth Amendment right to counsel. Lott testified at the suppression hearing that, while the two were cellmates at the Polk County Jail, Brown made statements about his pending case. Lott knew that Brown's case was receiving media attention and that fact gave Lott the idea to contact the police. Lott requested a meeting with the officer handling the investigation of Brown's case, the State Attorney, and a sergeant that Lott knew and trusted. Lott testified that he requested the State Attorney's presence because "I wanted to see what I could get out of it." The meeting was arranged and Lott met with Detective Harkins, Assistant State Attorney Wallace, and the sergeant whom he had requested. Lott aggressively tried to negotiate a deal on his own pending cases in exchange for working with the police on Brown's case. However, the only concession made by the State was that in exchange for Lott's assistance, the officials would testify at any hearing on his behalf to inform the court that he had assisted the police. Based on this understanding, Lott asked Brown questions over several weeks in order to elicit information to provide to the Sheriff's Department.
Lott met with Harkins four or five times to convey the information he had obtained from Brown. During their meetings, Harkins took notes but declined to give Lott any specific instructions as to what questions to ask Brown. Initially Harkins would receive notice from the jail when Lott wanted to make contact, but due to a concern that Brown would get suspicious, Harkins told Lott he would "just pop down a few days later" to see if Lott had any information. Harkins would sometimes make contact with Lott through Lieutenant Robinson, who was in charge of the detention unit of the jail. Harkins testified that he did not believe that he requested the jail to keep Lott in the same cell with Brown; however, Robinson testified that Harkins had asked if Lott could be left in the same cell with Brown.
Lott had been sentenced to a year for petit theft, but Harkins and Wallace went to court to testify on his behalf, which resulted in the court reducing the sentence to time served. In another case, Lott entered into a plea bargain with the State for a reduced charge.
In denying the motion to suppress, the trial court stated: "I don't think any promises were made. There was nothing more than an expectation. I don't think the leaving him in the cell rises to that level."
A trial court's ruling on a motion to suppress is entitled to a presumption of correctness and we interpret the evidence and reasonable inferences derived therefrom in a manner most favorable to sustaining the trial court's ruling. See Rolling v. State, 695 So.2d 278, 291 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 448, 139 L.Ed.2d 383 (1997).
The Sixth Amendment prohibits law enforcement officers from deliberately eliciting statements from a defendant after the right to counsel has attached. See Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The "deliberately elicited" standard is clearly satisfied when the police directly interrogate or question a defendant, but it also may be satisfied by less direct types of questioning. See Rolling, 695 So.2d at 290; see also United States v. Henry, 447 U.S. 264, 273, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (police conduct met "deliberately elicited" standard where fellow inmate, acting as government agent, stimulated conversations with the defendant in order to elicit incriminating information); Maine v. Moulton, 474 U.S. 159, 176-77, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (even though the defendant initiated the meeting, the defendant's right to counsel was violated *1166 where an undercover codefendant met with and actively obtained incriminating statements from him); but see Kuhlmann v. Wilson, 477 U.S. 436, 456, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (defendant's right to counsel not violated where police placed informant in defendant's cell because informant obeyed instructions not to question defendant, but merely to listen for information).
In Rolling, the court explained that the culpability of law enforcement was dependent upon the extent of its role in securing the confession indirectly. 695 So.2d at 291. "Passivity on the part of law enforcement" is the critical factor in the analysis. Id. "[A] knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." Id., quoting Moulton, 474 U.S. at 176, 106 S.Ct. 477. In Rolling, the court found no state action directed to obtaining information from the informant. See 695 So.2d at 291. The court, however, noted that state action could be "merely the intentional placing of an inmate in a certain location in order that the inmate may elicit conversations from a defendant." Id.
The evidence does not support the trial court's conclusion that the State remained passive in its dealings with Lott. First, it was undisputed that the officials promised to give testimony on Lott's behalf in exchange for his information. Further, Harkins' request to the jail detention officer to keep the inmates together and Harkins' arrangement with Lott to "just pop down a few days later" to see if Lott had any information showed that Brown's statements to Lott were "a product of a `stratagem deliberately designed to elicit an incriminating statement.'" See Rolling, 695 So.2d at 291. Accordingly, we conclude that the trial court erred in denying the motion to suppress the statements made after Lott's initial meeting with the officers. The State's case heavily relied upon Lott's testimony; thus, we cannot conclude that the error was harmless.
Because we hold that Brown is entitled to a new trial, we decline to address the remaining issues he raises on appeal. We note that on retrial, any statements that Brown made before Lott met with the officials would be admissible.
Reversed and remanded.
ALTENBERND, A.C.J., and FULMER and QUINCE, JJ., Concur.