PADOVANO, J.
The defendant, Arman Jouzdani, appeals his convictions for kidnapping, extortion and grand theft. He presents five arguments in the appeal, but we need only address one of them as we find it to be dispositive. We conclude that the trial *1266 court erred in allowing the prosecutor to impeach a defense witness with evidence of prior criminal offenses. The prosecutor failed to prove that the witness had been adjudicated guilty of the offenses, and therefore failed to establish that he had any prior convictions that could be used for impeachment under the Florida Evidence Code. Because we are unable to conclude beyond a reasonable doubt that this error was harmless, we must reverse and remand for a new trial.
The charges against the defendant arose from a failed attempt to purchase two pounds of marijuana. Cameron Suarez and Tim Sommers were acquainted with the supplier and were supposed to make the purchase from him on October 2, 2008, with funds provided in part by the defendant. The defendant gave the men $1,800.00 for his share of the marijuana.
Suarez remained at the defendant’s place of business, an auto sales and repair shop in Gainesville, while Sommers went out to consummate the transaction with the seller. At approximately 8:30 p.m., Sommers called Suarez to tell him that the seller had robbed him of the money and that he did not obtain the marijuana. The news of this development was then related to the defendant.
Suarez testified that the defendant became angry when he learned that he had lost his money. According to Suarez, the defendant called his girlfriend and told her to come down to the shop with his gun. The defendant also called his friend, Aaron Rollins. He reportedly told Suarez that Rollins was a “killer” and that he was bringing him in as the “muscle to fix the situation.” Suarez testified that he did not feel as though he was free to leave the shop.
Rollins arrived about thirty minutes later. At about the same time, the defendant’s girlfriend came to the shop and handed the defendant his gun. Suarez testified that Rollins and the defendant then passed the gun back and forth between them. He said that they were pointing the gun at his head and face and that they were threatening to kill him or shoot him in the kneecap if he did not come up with the defendant’s $1,800.00.
During the next few hours Suarez made several phone calls in an effort to get the money. He came up with a plan to offer the defendant his Volvo S60 in exchange for his freedom. Suarez was a student in Gainesville, but the Volvo was located in Jacksonville. He called a friend in Jacksonville, Jeremy Bisiaux, and asked him to drive the Volvo to Gainesville so that he could give it to the defendant.
Bisiaux testified that when Suarez called that night he sounded scared and that he appeared to be upset. Suarez told Bisiaux that he was being held hostage and that a gun was involved. When Bisiaux set out for Gainesville he did not know his precise destination but he eventually learned where he was to take the Volvo and he passed the information about the kidnapping along to police officers.
Bisiaux arrived with the Volvo, but the title to the vehicle was not in the file of papers Suarez had asked him to bring. The defendant reportedly made Suarez get into the Volvo and told him they were going to his apartment in Gainesville to look for the title. Suarez was in the passenger seat and the defendant was in the driver’s seat. Rollins took the gun and got into another car. He was planning to follow Suarez and the defendant to the apartment.
Police officers arrived at the shop as the men were preparing to depart. The officers ordered the men out of the Volvo and arrested the defendant. They did not find the gun until after they questioned Rollins. *1267 It was located in the wheel well of another car parked in the back of the shop.
The defendant testified at trial in his own defense. He admitted that he was involved that evening in an attempt to purchase drugs. When the defendant learned that Sommers had been robbed, he wanted to have his gun for his own protection. He called his girlfriend and asked her to bring the gun to the shop but he said that he never actually held the gun. He testified that Rollins took possession of the gun soon after the defendant’s girlfriend arrived.
Suarez was attempting to get the money the defendant had lost in the transaction but, according to the defendant, he was not confined against his will. Between 8:00 and 10:15 p.m., the defendant was in and out, eating pizza with his daughter, and closing up the shop, while Suarez made calls on his phone. The defendant told Suarez he did not believe that Sommers had been robbed, but he said that he did not threaten Suarez. The defendant added that if anyone had pointed a gun at Suarez in the main area of the shop, the incident would have been visible to everyone else who was there.
Larry Pringley, a mechanic employed at the shop, also testified for the defense. He told the jury that he was working on a car that night and he saw Suarez in the defendant’s company. Pringley testified that Suarez was mostly walking around, talking on his phone. At one point, Pring-ley observed Suarez talking on his phone outside the shop while the defendant was inside. Pringley did not see anyone carrying a gun, nor did he hear or see the defendant threaten Suarez.
The prosecutor informed the court out of the presence of the jury that Pringley had six prior convictions in Pennsylvania for receiving stolen property. He explained that these were misdemeanor offenses under the applicable state law but that they could be used for impeachment because they were crimes of dishonesty. Because the prosecutor did not have certified copies of any of the judgments, he asked for permission to proffer Pringley’s testimony.
When asked about the prior offenses during the proffer, Pringley testified that he had been convicted on six counts of receiving stolen property in Pennsylvania and that these offenses were committed about twenty years earlier. He said that he could not remember whether he had been adjudicated guilty of the offenses but he did remember that he served time in jail.
Defense counsel objected to the use of these prior offenses as impeachment on the ground that the state failed to prove that the defendant had been adjudicated guilty. The thrust of the objection was that the judge in Pennsylvania may have withheld adjudication of guilt and, in that event, the resulting order would not qualify as a conviction for the purpose of impeachment. The trial court overruled the objection stating, “I think that he’s indicated that he has six charges, that he received jail time. That would, to me, indicate that he’s been convicted of those charges. The witness himself has admitted to the six charges of receiving stolen property, and I think that’s sufficient.” With the benefit of this ruling, the prosecutor was allowed to impeach Pringley on cross examination by showing that he had committed six criminal offenses.
The jury found the defendant guilty as charged and the court sentenced him to a term of twenty years in prison for kidnapping with a ten-year minimum, a concurrent term of fifteen years for extortion, and a concurrent term of five years for grand theft. The defendant then appealed *1268 to this court to seek review of his convictions.
At issue in the appeal is the propriety of the impeachment of the defendant’s witness. Specifically, the question we must answer is whether the evidence was sufficient to establish that the witness had been convicted of the prior offenses as required by the Florida Evidence Code. Because the issue is one of law, we apply the de novo standard of review. See Sanders v. State, 35 So.3d 864 (Fla.2010); Williamson v. State, 48 So.3d 843 (Fla. 1st DCA 2010).
Section 90.608, Florida Statutes, (2008), lists the grounds for impeaching a witness. One of the permissible grounds for impeachment is to attack the character of the witness by showing that he or she had been convicted of a crime. This subject is addressed in more detail in section 90.610(1), Florida Statutes, (2008), which states in material part:
90.610 Conviction of certain crimes as impeachment.—
(1) A party may attack the credibility of any witness including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment[.]
Impeachment is authorized under this statute only if the witness has committed a felony or a crime involving dishonesty or false statement, and only if the prior offense resulted in a conviction. By its terms, the statute requires the party conducting the impeachment to present “evidence that that witness has been convicted of a crime.” (Emphasis added.)
A conviction within the meaning of the statute requires proof that the witness was adjudicated guilty of the offense. See State v. McFadden, 772 So.2d 1209 (Fla.2000). It is not enough to show that the witness was found guilty by a jury or that he or she entered a plea of guilty. The court may have withheld adjudication of guilt and in that event the resulting order would not qualify as a conviction.
In the present case, the prosecutor did not have certified copies of the orders or judgments entered in the Pennsylvania cases. Instead, he attempted to prove the existence of the convictions during a proffer with information provided by the witness himself. We need not determine whether this was an acceptable method of obtaining the evidence that will serve as a basis for the impeachment, inasmuch as the evidence obtained during the proffer was not sufficient, in any event, to prove that the witness had been convicted of the prior crimes.
The witness was asked if he had been adjudicated guilty of the crimes of dealing in stolen property in Pennsylvania. He did not know the answer to that question but he told the judge and the lawyers that he served time in jail for the offenses. The prosecutor then argued successfully that the witness must have been convicted of dealing stolen property because he served time in jail. However, the premise of this argument is not necessarily correct. The six charges of dealing in stolen property may have arisen from a single incident. The judge may have withheld adjudication of guilt and placed the witness on probation with a condition that he serve a brief period of time in jail. Perhaps it is more likely that the defendant was convicted given the fact that he served time in jail, but we simply do not know that. A conclusion that the witness was convicted because he spent time in jail would be based on speculation.
*1269 Florida courts have consistently held that a party who intends to impeach a witness with a prior criminal offense must have a certified copy of the conviction in his or her possession before questioning the witness about the offense. See Barcomb v. State, 68 So.3d 412 (Fla. 4th DCA 2011); Peoples v. State, 576 So.2d 783, 789 (Fla. 5th DCA 1991), affd, 612 So.2d 555 (Fla.1992); Brakeall v. State, 696 So.2d 1246 (Fla. 5th DCA 1997); Cummings v. State, 412 So.2d 436 (Fla. 4th DCA 1982); Williams v. State, 654 So.2d 261 (Fla. 2d DCA 1995) (accepting the basic principle but holding that constructive possession of the certified conviction record is sufficient). This case illustrates the wisdom of this rule. A certified copy of the conviction showing that the witness was adjudicated guilty of the offense is the most reliable way to prove that the witness was convicted within the meaning of section 90.610(1). The defendant may be entirely truthful about his or her prior record and yet not understand the distinction between an adjudication and a withholding. And, as was the case here, the circumstances might not conclusively establish the existence of the conviction.
The state argues in the alternative that the error in allowing the impeachment was harmless. We agree that Pringley’s testimony does not conclusively eliminate the possibility that the defendant committed a kidnapping that evening. He did not observe the men every moment of the time they were there at the shop. Yet it seems likely that if the defendant and Rollins had confined and threatened Suarez at gunpoint, Pringley would have noticed that at some point. Additionally, there are parts of Pringley’s testimony that tend to contradict the state’s version of the event. He said that at one point he saw Suarez talking on his cell phone outside the shop office at a time when the defendant was inside.
The test of harmless error in a criminal case is whether the state as the beneficiary of the error has shown beyond a reasonable doubt that the error did not contribute to the jury verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The question is not whether the error substantially affected the jury verdict, but whether there is a “reasonable possibility” that it affected the verdict. See Knowles v. State, 848 So.2d 1055 (Fla.2003). Mr. Pringley was an eyewitness to the interactions between the defendant and the victim that evening. He said that the defendant did not threaten or confine the victim, but his credibility was undermined by the improper impeachment. We are not able to say on this record that there is no reasonable possibility that the impeachment had an effect on the verdict.
In summary we conclude that the trial court erred in allowing the state to impeach the defendant’s witness. The prosecutor did not have in his possession certified copies of the convictions of the offenses that were the subject of the impeachment, and the evidence presented during the proffer did not prove that the witness had been convicted of the offenses. Because we are unable to conclude beyond a reasonable doubt that this error was harmless, we reverse and remand for a new trial. This disposition renders moot the state’s appeal from the sentence.
Reversed and remanded.
THOMAS and CLARK, JJ„ concur.