Damoorgian, J.
Terrence Saunders appeals his conviction and sentence for one count of battery and one count of lewd or lascivious conduct. On appeal, Appellant raises a jury selection issue and challenges two eviden-tiary rulings below. We affirm the trial court’s rulings on the jury selection issue and on a defense objection to law enforcement officer testimony during cross examination without further comment. However, we conclude that the trial court erred in denying Appellant’s motion to suppress his post-arrest statements to an undercover officer and his cellmate and, therefore, reverse.
By way of background, Appellant was arrested and charged with three counts of sexual battery by a person eighteen years of age or older on a person less than twelve years old and one count of lewd or lascivious conduct based on a family member’s accusations of sexual abuse. After Appellant was advised of his Miranda[1] rights, Appellant requested to have a lawyer present and did not provide a statement to law enforcement. While awaiting a bond determination, Appellant was placed in a cell with a jailhouse informant who worked with law enforcement in setting up and reporting in-prison drug transactions. *101 The placement was the result of medical circumstances and not law enforcement influence.
Shortly after Appellant was placed with the informant, the informant approached his law-enforcement handler and reported that Appellant indicated he was facing sexual battery charges and wanted to hire a hitman to kill the victim and the primary witness in his case. The handler, who had no previous knowledge of Appellant or his charges, asked the informant to obtain more information about Appellant’s intended targets. The informant complied and, based on the information he obtained, the handler was able to verify the charges against Appellant and the identities of the victim and witness. The handler then devised a plan wherein the informant, while wearing a wire, would tell Appellant that he knew of a hitman. The informant would then put Appellant in contact via telephone with the handler who would pose as the hitman. While developing this plan, the handler also contacted the lead investigator in Appellant’s sexual battery case, who in turn met with the informant to determine if he had any information pertinent to the sexual battery case. The sexual battery investigator determined that the informant did not have any useful information and instructed the informant not to ask any questions about the sexual battery case. The investigator did, however, advise the informant to portray himself as “somewhat of a pedophile” in order to gain Appellant’s trust in gathering more information on the murder for hire plot.
Thereafter, law enforcement obtained several recordings of conversations between Appellant and the informant and Appellant and the handler posing as a hitman. During one recorded telephone conversation between Appellant and the handler, Appellant provided information on the victim and the witness, including where they resided, where the witness worked, and where the victim went to school. In a separate recorded conversation between Appellant and the informant, Appellant provided a description of what he thought a witness saw happen between Appellant and the victim. Prior to trial, the State notified Appellant of its intent to use these statements against Appellant. Appellant moved to suppress the evidence, arguing that it was gathered in contravention to his Sixth Amendment right to counsel.
After hearing evidence of how the statements were gathered, the court issued an order denying Appellant’s motion to suppress. It concluded that Appellant’s Sixth Amendment rights were not violated because law enforcement did not take any action beyond merely listening which was designed to deliberately elicit incriminating statements. The court reasoned that since the informant initially gathered and reported Appellant’s statements on his own initiative without law enforcement intervention or assistance, all of Appellant’s subsequent recorded statements to the informant and law enforcement were admissible. The State went on to introduce the recorded statements as well as the handler’s and the informant’s testimony at trial. The jury ultimately acquitted Appellant on two of the sexual battery counts and found him guilty of lewd or lascivious conduct as well as the lesser included offense of battery on one of the sexual battery counts. This appeal follows.
“The Sixth Amendment prohibits law enforcement officers from deliberately eliciting statements from a defendant after the right to counsel has attached.” Brown v. State, 725 So.2d 1164, 1165 (Fla. 2d DCA 1998) (citing Massiah v. United, States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)). “The ‘deliberately elicited’ standard is clearly satisfied when the police directly interrogate or question a de *102 fendant, but it also may be satisfied by less direct types of questioning.” Id. “[A] knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State’s obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity.” Maine v. Moulton, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). As such, “[t]he passivity of law-enforcement authorities is the critical element in assessing the facts in any given case.” State v. Zecckine, 946 So.2d 72, 74 (Fla. 1st DCA 2006).
In Broun, the cellmate of a defendant in a high profile murder case contacted the state attorney and offered to obtain information from the defendant in exchange for a possible sentencing benefit. 725 So.2d at 1165. Law enforcement then worked to keep the defendant and the cellmate placed together, and the investigating detective periodically stopped by the jail to obtain updates from the cellmate. Id. The Brown court held that under these circumstances, the statements made to the cellmate should have been suppressed because they were “a product of a ‘stratagem deliberately designed to elicit an incriminating statement.’ ” Id. at 1166 (quoting Rolling v. State, 695 So.2d 278, 291 (Fla. 1997)). Conversely, in Rolling, the court held that statements made by a defendant to his cellmate were admissible because the evidence established the cellmate obtained the statements on his own initiative without assistance or a promised benefit from the state. 695 So.2d at 290-91. See also Cooper v. State, 856 So.2d 969, 973 (Fla. 2003) (holding that a defendant’s statements made to his cellmate were admissible because the evidence established that the cellmate contacted authorities of his own accord after the defendant bragged about his crimes).
Applying the framework set forth in Rolling and Brown, the First District’s decision in Zecckine establishes that the proper inquiry in determining whether a defendant’s statement to a jail-mate/informant violates a defendant’s Sixth Amendment rights is the degree of law enforcement involvement at the time the statement was made. 946 So.2d at 74. In Zecckine, the defendant made incriminating statements to his cellmate who then reported the statements to law enforcement and worked with law enforcement to obtain more information. Id. at 73. The court affirmed that any statements made by the defendant to his cellmate after the date the cellmate began working with law enforcement were obtained in violation of his Sixth Amendment rights and were not admissible, but that any statements made before that date were admissible. Id. at 74. See also Peoples v. State, 612 So.2d 555, 556 n.1 (Fla. 1992) (although a defendant’s jail-mate approached police on his own accord, recorded statements violated defendant’s Sixth Amendment rights because the state granted the cellmate immunity and “otherwise arranged for and conducted the clandestine monitoring and taping”).
In ruling on Appellant’s motion to suppress, the trial court concluded that since the informant initially gathered and reported Appellant’s statements on his own initiative without law enforcement intervention or assistance, all of Appellant’s subsequent statements to the informant were admissible. Under Zecckine and Peoples, this ruling was incorrect. The court’s inquiry should have focused on the level of law enforcement influence at the time the statements were made. Certainly, prior to the point the informant approached his handler about Appellant, any statements Appellant made to the informant were not *103 the result of law enforcement intervention. However, the same cannot be said of the recorded statements. Not only did law enforcement outfit the informant with a wire and arrange for him to receive a reduced sentence, but it came up with a plan wherein a law enforcement officer was involved in an undercover capacity. Such active participation by law enforcement in obtaining information cannot logically be deemed “passive.” See Peoples, 612 So.2d at 556, n.1 (holding that once police grant immunity and arrange for and conduct monitoring and taping of a defendant through an informant who voluntarily approached the police, the information is no longer passively obtained).
Despite the fact that the admitted recorded statements were obtained as a result of law enforcement intervention, the State argues that Appellant’s Sixth Amendment rights did not attach to the statements because they were gathered as part of an investigation into the uncharged crime of solicitation of murder for hire. Therefore, the State maintains that the statements were admissible. We disagree.
 “[U]nlike the Fifth Amendment right to counsel, ‘the Sixth Amendment right to the assistance of counsel is ‘offense specific’ and applies only to the offense or offenses with which the defendant has actually been charged, and not to any other offense he may have committed but with which he has not been charged.’” Scott v. State, 66 So.3d 923, 933 (Fla. 2011) (quoting Ibar v. State, 938 So.2d 451, 470 (Fla. 2006)). Accordingly, law enforcement may investigate uncharged offenses against a defendant who has invoked his Sixth Amendment rights in other pending charges. See id. However, this does not mean that the government may use a defendant’s statements as obtained during a permissible investigation into an uncharged crime to prove that the defendant is guilty of a charged crime. On this point, the Supreme Court’s decision in Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) is instructive.
In Moulton, two men were charged as co-defendants with various theft charges. Id. at 162, 106 S.Ct. 477. Both men retained counsel and were released on bail pending trial, but one had a change of heart and confessed to the police, also letting them know that his co-defendant mentioned wanting to kill one of the state’s witnesses. Id. The police offered the cooperative co-defendant a deal in exchange for his further cooperation investigating the murder plot. Id. The co-defendant turned informant agreed, and began recording his phone conversations with his co-defendant. Id. at 164, 106 S.Ct. 477. The informant also wore a wire to a face-to-face meeting with the co-defendant. Id. Although the express purpose of the meeting was to discuss strategy for the theft trial, the police told the informant not to question the co-defendant about the thefts and to “just be himself.” Id. at 165, 106 S.Ct. 477. During that meeting the men briefly discussed the idea of eliminating witnesses and, at the informant’s prompting, went over the thefts in great detail. Id. All of these statements were admitted against the co-defendant at his theft trial based on the trial court’s conclusion that the statements did not violate the co-defendant’s Sixth Amendment rights because “the recordings were made... ‘to gather information concerning defendant Moulton’s plans to kill [a witness].’” Id. at 166-67, 106 S.Ct. 477.
In considering the propriety of the trial court’s ruling, the Supreme Court held:
The police have an interest in the thorough investigation of crimes for which formal charges have already been filed. They also have an interest in investigating new or additional crimes. Investiga *104 tions of either type of crime may require surveillance of individuals already under indictment. Moreover, law enforcement officials investigating an individual suspected of committing one crime and formally charged with having committed another crime obviously seek to discover evidence useful at a trial of either crime. In seeking evidence pertaining to pending charges, however, the Government’s investigative powers are limited by the Sixth Amendment rights of the accused. To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in Massi-ah. On the other hand, to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public’s interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, not withstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused’s right to the assistance of counsel.
Id. at 179-80, 106 S.Ct. 477 (footnotes omitted).
In other words, Moulton recognizes that evidence obtained during the course of a criminal investigation may sometimes have a “dual purpose.” Id. at 179 n. 15, 106 S.Ct. 477. In some circumstances, a defendant’s statement may simultaneously incriminate the defendant with respect to both charged and uncharged offenses. Moulton makes it clear that the fact the government may have a legitimate and constitutional reason for confronting a person facing criminal charges does not permit it to circumvent the protection of the Sixth Amendment as it pertains to the pending charges. The inevitable conclusion is that statements which serve such a dual purpose may be admissible in one trial but not the other. See United States v. Bender, 221 F.3d 265, 270 (1st Cir. 2000) (holding that statements made by a defendant pending charges to an undercover government agent in an uncharged murder for hire investigation were not admissible as evidence of a guilty mind in the trial on the pending charges); Rubalcado v. State, 424 S.W.3d 560, 573 (Tex. Crim. App. 2014) (“Of course, if a statement incriminates a defendant with regard to two separate offenses simultaneously, one a charged offense and one an uncharged offense, then that particular statement could be inadmissible at one trial and admissible at the other.” (quotation omitted)).
Here, although the recorded statements gathered by law enforcement may have been permissibly obtained and admissible in a murder for hire prosecution, they were used in Appellant’s sexual battery case to bolster witness testimony and show that Appellant had a guilty mind at work. As gathered and used for this purpose, the statements violated Appellant’s Sixth Amendment rights. Therefore, we hold that the court erred in admitting any statements made by Appellant after the informant approached law enforcement and began working on Appellant’s case at law enforcement’s behest.
Finally, we consider whether the use of the recording at trial was harmless *105 error. Peoples, 612 So.2d at 557. Appellant’s guilt was highly contested. Moreover, the jury’s verdict suggests that it did not entirely believe the victim’s account of the events, thus making Appellant’s own statements that much more important. Indeed, in issuing its sentence, the court explained that it was the recorded statements which convinced the court that Appellant was guilty. Accordingly, we conclude that the error was not harmless.

Reversed, and remanded for a new trial.

GERBER and KLINGENSMITH, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).